### UNITED STATES v. HALL.

(District Court, D. Montana. January 27, 1918.)

No. 597.

1. WAR ☞4—SEDITION—OFFENSES—"FALSE REPORTS"—"FALSE STATEMENTS."
    Under Espionage Act June 15, 1917, c. 30, § 3, 40 Stat. 219, declaring that whoever, when the United States is at war, shall willfully make or convey false reports or false statements, with intent to interfere with the operation or success of the military or naval forces of the United States, shall be punished, false reports and false statements import reports and statements of facts, and not accused's beliefs, intentions, and arguments; but slanders of the President and of the nation are false reports and statements within the act.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False Statement.]

2. WAR ☞4—SEDITION—OFFENSES—"ATTEMPT."
    The oral utterance of false statements and reports concerning the cause of war, together with slanders of the President and nation, in the presence of persons registered for the draft, is not, where there were no military forces in the vicinity, a violation of Espionage Act, § 3, declaring that whoever, when the United States is at war, shall willfully make or convey false reports or false statements, with intent to interfere with the operation or success of the military or naval forces of the United States or promote the success of its enemies, and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination or disloyalty in the military or naval forces shall be punished, the statements not being calculated to cause disloyalty in the military forces; for, while the statute makes the offense substantive, and intent can be inferred from the natural consequences of one's act,

the offense is not consummated where the means adopted were not calculated to have the effect desired, the offenses denounced being analogous to attempts which are efforts with specific intent to commit specific crimes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Attempt.]

3. WAR ⬡�ené4—SEDITION—ESPIONAGE ACT—"MILITARY AND NAVAL FORCES"—"NAVAL FORCES."

Within Espionage Act, § 3, the term "military and naval forces" is used in its ordinary significance, as including only those organized and in service, and not persons merely registered and subject to future organization and service.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Military Forces; Naval Forces.]

4. WAR ⬡➝4—SEDITION—OFFENSES.

Espionage Act, § 3, declaring that whoever shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished, does not denounce a mere attempt to obstruct; this being shown by the fact that Congress, when intending that a mere attempt should be a crime, plainly so declared, as in Penal Code (Act March 4, 1909, c. 321) § 135, 35 Stat. 1113 (Comp. St. 1916, § 10305), relating to attempts to obstruct the due administration of justice.

5. WAR ⬡➝4—SEDITION—ESPIONAGE ACT.

Espionage Act, § 3, denouncing the willful circulation of false reports or false statements with intent to interfere with the operation or success of the military forces of the United States, is not intended to suppress criticism or denunciation, truth or slander, argument or loose talk, but only false facts willfully put forward as true, and with the specific intent to interfere with army and navy operations, and mere slanderous or disloyal remarks furnish no basis for a prosecution.

6. CRIMINAL LAW ⬡➝95—OFFENSES—JURISDICTION OF STATE COURTS.

In so far as disloyal slanders or libels cause or tend to cause breaches of the peace, they are offenses against the state, and can be prosecuted only in the state courts.

Ves Hall was indicted for violation of Espionage Act, § 3. On motion for directed verdict of acquittal. Motion granted.

B. K. Wheeler, U. S. Atty., of Butte, Mont., Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont., and James H. Baldwin, Asst. U. S. Atty., of Butte, Mont.

Dan T. Malloy and Matt F. Canning, both of Butte, Mont., for defendant.

BOURQUIN, District Judge. On yesterday, granting defendant's motion for a directed verdict, the court stated that, because of the grave issues involved and the necessity for interpretation of the Espionage Act, to the end that a precedent be established, it would incorporate its reasons and views in a written decision and opinion, made a part of the records of the case and of the court. It accordingly does so as follows:

The indictment charges that defendant violated section 3 of the Espionage Act, in that (1) he did "make and convey false reports and false statements with intent to interfere with the operation and success of the military and naval forces of the United States and to promote

the success of its enemies"; and (2) that he did "cause and attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, and obstruct the recruiting and enlistment service of the United States, to the injury of the service of the United States," specifically as follows: At divers times, in the presence of sundry persons, some of whom had registered for the draft, defendant declared that he would flee to avoid going to the war, that Germany would whip the United States, and he hoped so, that the President was a Wall Street tool, using the United States forces in the war because he was a British tool, that the President was the crookedest ——— ever President, that he was the richest man in the United States, that the President brought us into the war by British dictation, that Germany had right to sink ships and kill Americans without warning, and that the United States was only fighting for Wall Street millionaires and to protect Morgan's interests in England.

Having in mind the rule applicable to this motion for a directed verdict, the evidence would justify a finding that defendant did so make the declarations charged. But it would not support a verdict of guilty of any of the crimes charged. It appears the declarations were made at a Montana village of some 60 people, 60 miles from the railway, and none of the armies or navies within hundreds of miles, so far as appears. The declarations were oral; some in badinage with the landlady in a hotel kitchen; some at a picnic; some on the street; some in hot and furious saloon argument.

[1-3] Adverting to the crimes designated (1), false reports and false statements import reports and statements of facts, and not accused's opinions, beliefs, intentions, and arguments. Hence defendant's beliefs, opinions, and hopes are not within the statute. But his slanders of the President and nation are false reports and false statements, and are within the Espionage Act. While the act makes the (1) offenses substantive, they are of the nature of attempts, like in principle, and largely and to the extent indicated governed by the law of attempts. It is settled law that attempts are efforts with specific intent to commit specific crimes, which efforts fail, are apparently adapted to accomplish the intended crimes, and are of sufficient magnitude and proximity to the object of their operation that they are reasonably calculated to excite public fear and alarm that such efforts will accomplish the specific crimes if they do not fail. These slanders by defendant satisfy magnitude and apparent adaptation, but, in view of all the facts and circumstances in proof, neither the specific intent to interfere with, nor proximity to, the military and naval forces appears.

When facts and circumstances will justify a finding that accused intended the natural and ordinary consequences of his acts, the intent may be inferred. There are two fatal objections to such inference here, viz.: Interference with the operation or success of the military or naval forces is not the natural and ordinary consequences of said slanders, but rather breach of the peace and a broken head for the slanderer are, and the facts and circumstances, times and places, oral kitchen gossip and saloon debate, the impossibility of far-distant military and naval forces hearing or being affected by the slanders, and

all else, render the inference unjustified, absurd, and without support in the evidence. Military and naval forces, in the Espionage Act, mean the same as in the declarations of war, the ordinary meaning, viz. those organized and in service, not persons merely registered and subject to future organization and service. Furthermore, even if the slanders were with the specific intent denounced by the Espionage Act, they fail of the required proximity to constitute attempts and the said (1) offenses. Under the circumstances they were not reasonably calculated to create public fear and alarm that they would interfere with the operation and success of far-distant armies and navy. Rather would they create anger, disgust, and desire to punish the slanderer. It is as if A. shot with a .22 pistol with intent to kill B., two or three miles away. The impossibility would prevent public fear and alarm of homicide, and A. could not be convicted of attempted murder.

There is now no claim of intent to promote enemy success. Otherwise, the foregoing also applies to those crimes charged. It is admitted no insubordination, disloyalty, mutiny, or refusal of duty by the military or naval forces was caused by the slanders, and, in view of the law and reasoning aforesaid, the charges of attempts thereto likewise are not sustained by the evidence.

[4] Nor does the evidence sustain the charge of "willfully obstructing the recruiting or enlistment service of the United States, to the injury of the service of the United States." To sustain the charge, actual obstruction and injury must be proven, not mere attempts to obstruct. The Espionage Act does not create the crime of attempting to obstruct, but only the crime of actual obstruction, and when causing injury to the service. Whenever Congress intended that attempted obstructions should be a crime, it plainly said so, as may be seen in the statute making it a crime to attempt to obstruct the due administration of justice. Section 135, Penal Code.

[5] The Espionage Act is not intended to suppress criticism or denunciation, truth or slander, oratory or gossip, argument or loose talk, but only false facts, willfully put forward as true, and broadly, with the specific intent to interfere with army or navy operations. The more or less public impression that for any slanderous or disloyal remark the utterer can be prosecuted by the United States is a mistake. The United States can prosecute only for acts that Congress has denounced as crimes. Congress has not denounced as crimes any mere disloyal utterances, nor any slander or libel of the President or any other officer of the United States.

United States attorneys throughout the country have been unjustly criticized because they do not prosecute where they cannot. In instances their proper failure to prosecute has been made subject of complaint to the Department of Justice to oust them or to defeat reappointment. The patriotism that inspires such criticism and complaints is less a passion than passionate. In the main, the government's attorneys are of good judgment, and will not be coerced by such criticism and complaints to futile prosecutions or persecutions.

[6] In so far as disloyal slanders or libels cause or tend to cause breaches of the peace, they are offenses against the state of Montana,

and can be prosecuted only in the courts of the state, by the state's prosecutors. Slanders like those herein are unspeakable. (Incidentally, the defendant denies them.) They should be made crimes against the United States, at times like these, at least. But, since the sedition law had its share in the overthrow of the Federalists and in the elevation of Jefferson to the Presidency and his party to power, Congress has not ventured to denounce as crimes slanders and libels of government and its officers. The genius of democracy and the spirit of our people and times seem yet unable to avoid greater evils than benefits from laws to that end.

Any attempt to define all that will or will not constitute the crimes denounced by said section 3 would be difficult—yes, impossible. Every case will depend on its own facts and circumstances, as various as human conduct.

The motion to direct a verdict of acquittal of defendant is granted, and the clerk will enter such a verdict of record.