## HERMAN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1919.)

### No. 3234.

1. WAR ⊂⊃4—ESPIONAGE ACT—PUBLICATION OF FALSE CIRCULAR—INTERFERENCE WITH SUCCESS OF MILITARY FORCES.

In a prosecution for publishing a false circular to interfere with the operation and success of the military and naval forces of the United States, certain correspondence between defendant and other Socialists, appearing after declaration of a state of war with Germany, *held* admissible as showing defendant's state of mind and his intent in making public his circular.

2. WAR ⊂⊃4—ESPIONAGE ACT—PUBLICATION OF FALSE CIRCULAR—EVIDENCE.

In a prosecution for publishing a false circular with intent to interfere with the operation of the military forces of the United States, certain correspondence between defendant and another before the declaration of a state of war between the United States and Germany *held* admissible, as showing defendant's mental attitude at a time not too remote from the time he committed the act charged.

3. WAR ⊂⊃4—ESPIONAGE ACT—FALSE CIRCULAR—EVIDENCE.

In a prosecution for publishing a false circular with intent to interfere with the operation of the military forces of the United States, certain pamphlets found in defendant's possession, referring to the alleged plutocratic origin of the war with Germany, etc., *held* admissible to show defendant's state of mind and intention, as were copies of receipts found in defendant's office for money sent by correspondents to pay for copies of the pamphlets.

4. WAR ⊂⊃4—ESPIONAGE ACT—FALSE CIRCULAR—EVIDENCE.

In a prosecution for publishing a false circular with intent to hinder the operation of the military forces of the United States, testimony of two persons to a conversation with defendant after the declaration of a state of war between the United States and Germany *held* admissible to show defendant's mental attitude, though he was not on trial for his opinions or for being a pacifist or a Socialist.

<hr>

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. CRIMINAL LAW ⟪⇒763, 764(17)—INSTRUCTION—COMMENT ON EVIDENCE.

    In a prosecution for publishing a false circular with intent to hinder the operation of the military forces of the United States, instruction that evidence of the purchase and circulation of other literature by defendant, and of his statements and correspondence to show his condition of mind, had been permitted only to indicate the trend of his thought with relation to the particular act charged, *held* not improper as a comment on the evidence or as tending to confuse the jury.

6. WAR ⟪⇒4—ESPIONAGE ACT—FALSE CIRCULAR —INSTRUCTION.

    In prosecution for publishing a false circular with intent to hinder the operation of the military forces of the United States, an instruction that it was immaterial what Lloyd George said during the Boer War, what William Pitt said during the Rebellion, what George Washington said with relation to pending legislation, or what Roosevelt had said prior to the time involved, *held* proper.

7. WAR ⟪⇒4—ESPIONAGE ACT—FALSE CIRCULAR—SUFFICIENCY OF EVIDENCE.

    Evidence *held* sufficient to sustain a conviction of the state secretary of the Socialist party of a state for having published a false circular with intent to interfere with the operation of the military forces of the United States.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Emil Herman was convicted of interfering with the operation and success of the military and naval forces of the United States, and he brings error. Affirmed.

The plaintiff in error was found guilty upon two counts of an indictment, each of which charged: That continuously between April 6, 1917, and April 19, 1918, he published and exhibited in a described room or office in Everett, Wash., a printed circular in the following words: "The Military Ideal. Young Man: The lowest aim in your life is to be a good soldier. The 'good soldier' never tries to distinguish right from wrong. He never thinks, never reasons; he only obeys. If he is ordered to fire on his fellow citizens, on his friends, on his neighbors, on his relatives, he obeys without hesitation. If he is ordered to fire down a crowded street when the poor are clamoring for bread, he obeys and sees the gray hairs of age stained with red and the life tide gushing from the breast of women, feels neither remorse nor sympathy. If he is ordered off as one of a firing squad to execute a hero or a benefactor, he fires without hesitation, though he knows the bullet will pierce the noblest heart that ever beat in human breast. A good soldier is a blind, heartless, murderous machine. He is not a man, he is not even a brute, for brutes only kill in self-defense. All that is human in him, all that is divine in him, all that constitutes a man, has been sworn away when he took the enlistment oath. His mind, his conscience, aye his very soul, are in the keeping of his officer. No man can fall lower than a soldier—it is a depth beneath which we cannot go. Young Man Don't Be a Soldier—Be a Man!!" That said office during said period was visited by a large number of men, their names being unknown to the grand jury, who were between the ages of 21 and 45 years, fit and qualified for military services, and who were citizens of the United States. That every statement in said circular was false and untrue, as the defendant well knew. The intent charged in one count was that the acts so charged were done with the intent to interfere with the operation and success of the military and naval forces of the United States, and in the other count the intent was alleged to be to promote the success of the enemies of the United States. On the conviction on these two counts the defendant was sentenced.

⟪⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Austin Lewis, of Oakland, Cal., for plaintiff in error.

Robert C. Saunders, U. S. Atty., and Clarence L. Reames, Sp. Asst. Atty. Gen., and Hinman D. Folsom, Jr., all of Seattle, Wash., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] Error is assigned to the admission in evidence of certain correspondence which was found in the defendant's office. The correspondence was in substance the following:

Schmidt wrote on April 6, 1918, to the defendant, sending his resignation as a member of the Socialist organization, expressing patriotic sentiments and disapproval of the attitude of the Socialist party, to which, on April 12, 1918, the defendant answered, stating that Schmidt was wrong in his attitude toward the Socialist party program and principles.

Maurer wrote to the defendant on May 9, 1917, referring scornfully to a patriotic parade which he had witnessed, and saying:

"They have the audacity to ask us to take a gun and defend this land of the free and the brave."

To that letter the defendant replied on May 10, 1917, expressing similar sentiments in regard to patriotic parades.

On April 11, 1918, Salmon wrote to the defendant, stating that he had been sentenced to nine months in jail for refusing to answer the questionnaire, stating that he had appealed the case, and saying:

"The questionnaire is the first step in an extensive program to militarize America. If we oppose militarism in its inception, it cannot grow."

On April 17, 1918, the defendant answered, stating that Salmon's cause was a worthy one.

All this correspondence was introduced for the purpose of showing the state of mind of the defendant and the intention with which he posted the printed circular which is set forth in the indictment. For that purpose they were clearly admissible.

The correspondence with Gast differs from the other correspondence, in that it occurred in February, 1917, before the declaration of war between the United States and Germany. Gast wished to have a circular printed and distributed to prevent enlistment in the army of the United States, which the government was then soliciting, and the defendant approved the scheme. We are unable to see that the admission of this evidence was error for which the judgment should be reversed. It also had its value as showing the mental attitude of the defendant at a time not too remote from the time when he committed the act which is the subject of the indictment.

[3] Error is assigned to the admission in evidence of certain pamphlets found in the defendant's possession, copies of which he was shown to have distributed. One of them, entitled "The Menace of Militarism," refers to the mighty ones, the masters in the land, as having turned militaristic and developed a jingoism of their own, more vicious, because more unjustifiable, than that of the Germans, and

speaks of "the plutocratic oligarchy which controls the United States to militarism." Another was entitled "Mental Dynamite." On the front page it shows a picture of the hands of a soldier striking a bayonet through the hands of labor. It contains this sentence:

"The bayonet is a stinger made by the working class, sharpened by the working class, nicely polished by the working class, and then patriotically thrust into the working class by the working class, all for the employer class."

Another pamphlet was entitled "The Great Madness." It contains many statements similar to the following:

"The entrance of the United States into the world's war on April 6, 1917, was the greatest victory that the American plutocracy has won over the American democracy since the declaration of the war with Spain in 1898."

These pamphlets, like the correspondence above referred to, were admitted for the purpose of showing the state of mind and the intention of the defendant, and for that purpose they were admissible. The same may be said of the copies of receipts found in the defendant's office, receipts for money sent by various correspondents to pay for copies of the pamphlets above referred to.

[4] Nor do we find error in the admission of the testimony of Black and Swale, each of whom testified to a conversation with the defendant after the entry of the United States into the war. These conversations were admitted expressly for the purpose of showing the intent of the defendant, and in instructing the jury the court carefully limited the testimony to the question of intent. It is true, as counsel for defendant urges, that the defendant was not being tried for his opinions or for being a pacifist, or for being a Socialist, but for publishing the circular described in the indictment with the criminal intent therein alleged. But the evidence to which exception was taken all tended to show the mental attitude of the defendant and had its bearing upon the question of his intent and was admissible for that purpose. Kettenbach v. United States, 202 Fed. 377, 120 C. C. A. 505, and cases there cited. In Kirchner v. United States (Bulletin No. 174) 255 Fed. 301, —— C. C. A. ——, the court, in answering a similar contention to that which is here made said:

"In admitting this evidence the trial court distinctly and more than once advised the jury that this testimony was admitted only as bearing on the intent of the defendant in making the statements set out in the indictment. The evidence in question does have a tendency to prove that the defendant, if he made the statements charged, made them with the intent charged."

[5, 6] The defendant assigns error to the instruction of the court to the jury that the evidence of the purchase and circulation of other literature by the defendant, and his conversations and statements and correspondence, to show his condition of mind, had been permitted only for the purpose of indicating the trend of his thought with relation to the particular act charged in the indictment. This instruction is not open to the objection, which is now advanced, that it was a comment upon the evidence and tended to confuse the jury. Also without merit is the assignment of error to that portion of the charge in which the court said to the jury:

"It is immaterial what Lloyd George said during the Boer War, what William Pitt said during the Rebellion, what George Washington said with relation to legislation then pending, or what Jack London said, * * * or what Theodore Roosevelt has said prior to this time."

It appears elsewhere that what was thus said by the court was in answer to an argument made on behalf of the defendant that the persons so named had been permitted to criticize their government. It cannot be seen that the defendant was in any way prejudiced by the instruction. What the court said was true, and was not improperly said.

[7] The contention that the judgment is not supported by evidence cannot be sustained. There was no request for an instructed verdict for the defendant. Notwithstanding that fact, we have examined the evidence, and we find that, in addition to the contents of the posted circular which speak for themselves, the defendant, as state secretary of the Socialist party of the state of Washington, had charge of the office in which the circular was posted, and that during all the time between June 15, 1917, and May 6, 1918, the circular was posted upon a bookcase in the office, and that daily during that period the office was visited by a number of men between the ages of 18 and 45, many of them between the ages of 21 and 31 years, who were qualified and subject to duty in the military and naval forces of the United States. These facts, together with the evidence showing the intent of the defendant, were amply sufficient.

The judgment is affirmed.