EQUI v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. October 27, 1919.)

No. 3328.

1. INDICTMENT AND INFORMATION ☜130—ESPIONAGE ACT.
   An indictment charging different offenses in violation of Espionage Act, § 3, as amended by Act May 16, 1918, c. 75, § 1 (Comp. St. 1918, § 10212c), in separate counts, *held* sufficient.

2. CONSTITUTIONAL LAW ☜90—FREEDOM OF SPEECH; ESPIONAGE ACT.
   The Espionage Act *held* not unconstitutional, as abridging the freedom of speech.

3. ARMY AND NAVY ☜40—ESPIONAGE ACT; EVIDENCE OF FORMER UTTERANCES.
   On trial of defendant for violation of Espionage Act, § 3 (Comp. St. 1918, § 10212c), by making public statements which were disloyal and intended to obstruct recruiting, incite resistance to the United States, and promote the cause of its enemies, statements made in speeches by defendant prior to the passage of the act *held* admissible on the question of purpose and intent, where properly limited.

In Error to the District Court of the United States for the District of Oregon; R. S. Bean, Judge.

Criminal prosecution by the United States against Marie Equi. Judgment of conviction, and defendant brings error. Affirmed.

The indictment in this case charges a violation of section 3 of Espionage Act June 15, 1917, c. 30, tit. 1, 40 Stat. 219, as amended by Act May 16, 1918, c. 75, § 1, 40 Stat. 553 (Comp. St. 1918, § 10212c). In general terms the charge is that the plaintiff in error on June 27, 1918, while the United States was at war with the Imperial German government, at a public meeting in a hall of the Industrial Workers of the World in the city of Portland, state of Oregon, in the presence of certain persons named and a large number of other persons to the grand jurors unknown, did willfully, knowingly, unlawfully, and feloniously state in substance and to the effect as follows, to wit:

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 251 U. S. —, 40 Sup. Ct. 219, 64 L. Ed. —.

"(1) That she (meaning the said defendant) and all of her fellow workers (meaning the members of the Industrial Workers of the World) were not fighting for the flag containing the *red, white and blue,* nor the British flag, nor for a flag of any country, but that the fellow workers and the I. W. W. platform (meaning the members and platform of the Industrial Workers of the World) stood for the *industrial flag,* the red banner that stood for the blood of the Industrial Workers.

"(2) That the ruling class had been in power long enough, with the law and the army and navy behind them, and that they (meaning the members of the Industrial Workers of the World) knew that there were fellow workers pulled into the army against their wills, and were placed in the trenches to fight their own brothers and relatives.

"(3) That the members of the Industrial Workers of the World were clean fighters, and not like the dirty, corruptible scum of the army and navy.

"(4) That it was against the I. W. W. platform (meaning the platform of the Industrial Workers of the World) to injure or kill another fellow worker, but if it was necessary to do this, to gain their rights, that she for one, and every man or woman packing a red card (meaning a membership card in the Industrial Workers of the World) would be willing to sacrifice all they had, their life, if need be, for the cause of industrial freedom.

"(5) That the Irish revolutionists now had a chance to throw off their master (meaning the kingdom of Great Britain and Ireland), while he was weak and unable to stop them, and that the Irish were taking advantage of this condition, and were asserting their rights, and that the I. W. W.'s (meaning the members of the Industrial Workers of the World) should do likewise."

The indictment contains eight counts in all, but a verdict of not guilty was directed by the court as to counts 1, 4 and 8. The second count charges that the foregoing statements were calculated to and intended to cause and attempt to cause, incite and attempt to incite, insubordination, disloyalty, mutiny, and refusal of duty within and among the military and naval forces of the United States. The third count charges that the statements were made with intent to prevent, hinder, delay, and obstruct, and attempt to obstruct, the recruiting and enlistment service of the United States. The fifth count charges that the statements were made, and consisted of disloyal, profane, scurrilous, and abusive language about the military and naval forces of the United States, and, were made with intent, and were calculated to and intended to bring the military and naval forces of the United States into contempt, scorn, contumely, and disrespect. The sixth count charges the same with reference to the flag, while the seventh count charges that the language was calculated and intended to incite, provoke, and encourage resistance to the United States, and to promote the cause of its enemies.

The jury returned a verdict of guilty as to counts 2, 3, 5, 6, and 7, and the present writ of error was sued out to reverse the judgment and sentence which followed the verdict.

James E. Fenton, of Portland, Or., and George F. Vanderveer, of Seattle, Wash. (C. E. S. Wood, of Portland, Or., of counsel), for plaintiff in error.

Bert E. Haney, U. S. Atty., and Barnett H. Goldstein, Asst. U. S. Atty., both of Portland, Or.

Before MORROW and HUNT, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge (after stating the facts as above). While a considerable number of errors have been assigned, they all go either to the sufficiency or form of the indictment, or to the competency of certain testimony admitted by the court over the objection of the plaintiff in error. The objections to the indictment are threefold: First,

because the crime defined by the Espionage Act is analogous to the crime of libel, and the indictment under consideration does not conform to legal requirements in such cases; second, because the several counts of the indictment are duplicitous; and, third, because the Espionage Act itself is unconstitutional and void.

[1] The distinction between the crime of libel and the crime defined by the Espionage Act was pointed out by this court in the recent case of Kumpula v. United States, 261 Fed. 49, —— C. C. A. ——, where a similar indictment was upheld. The charge of duplicity is not discussed in the brief, and the indictment seems to conform to common usage in such cases. It charges the willful use of language well calculated to produce the different results condemned by the statute; it informs the defendant of the nature of the accusation against her; it is sufficiently definite to enable her to take advantage of a former conviction or acquittal, and to enable the court to determine whether the facts charged, if proved, constitute a crime under the law. More than this the law does not require.

[2] The validity of the Espionage Act is assailed upon two grounds: First, because the crime there defined is treasonable, and is punishable as treason, or not at all, under section 3 of article 3 of the Constitution of the United States; and, second, because it is violative of article 1 of the Amendments to the Constitution of the United States, in that it abridges the freedom of speech and of the press. These criticisms are fully answered by recent decisions of the Supreme Court of the United States.

In Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561, the court said:

"Some reference was made in the proceedings and in argument to the provision in the Constitution concerning treason, and it was suggested on the one hand that some of the matters dealt with in the act of 1917 were treasonable, and punishable as treason, or not at all, and, on the other, that the acts complained of not being treason could not be punished. These suggestions seem to us to need no more than to be stated."

In Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 249, 63 L. Ed. 470, the court said:

"We admit that in many places and in ordinary times the defendants, in saying all that was said in the circular, would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. Akins v. Wisconsin, 195 U. S. 194, 205, 206, 25 Sup. Ct. 9, 49 L. Ed. 147. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 439, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. When a nation is at war, many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight, and that no court could regard them as protected by any constitutional right."

So in the Debs Case, 249 U. S. 211, 39 Sup. St. 252, 63 L. Ed. ——, the court said:

"The main theme of the speech was Socialism, its growth, and a prophecy of its ultimate success. With that we have nothing to do, but if a part or the manifest intent of the more general utterances was to encourage those present to obstruct the recruiting service, and if in passages such encouragement was directly given, the immunity of the general theme may not be enough to protect the speech."

The general government has full power to declare war and raise armies, and it has every power necessary and appropriate to carry these express powers to a successful issue, and to deny to it the power to prohibit acts which directly interfere with the operation of the government in raising armies and in prosecuting the war is to deny to it one of the most common and ordinary attributes of sovereignty.

[3] The court admitted testimony tending to show the import of speeches and declarations made by the plaintiff in error in the city of Portland prior to the date in question and prior to the passage of the act under which the indictment was returned. The reason for admitting this class of testimony was thus explained by the court:

"Evidence has been received, also, of things claimed to have been done and said by her on still other occasions. All this evidence, as I have stated to you and now repeat, was admitted solely for one purpose, namely, that you might determine therefrom, and from the other evidence on the point, what defendant's purpose or intent was in making the statements imputed to her in the indictment, in the event that you find such statements were actually made."

Counsel earnestly insisted that this ruling was erroneous, for the reason that an illegal intent can never be inferred from a legal act. This argument is based upon the ground that the prior statements and declarations of the accused were made at a time when such statements and declarations were not prohibited by law, and therefore the testimony was incompetent. This objection has also been answered by this court in Rhuberg v. United States, 255 Fed. 865, —— C. C. A. ——. Similar testimony was there admitted, and its application similarly restricted by the court, and in passing upon the objection this court said:

"This evidence of statements of the defendant made prior to the entry of the United States into the war, thus restricted and limited by the court, was clearly admissible under a well-known rule of evidence upon that subject."

The theory upon which such testimony is admissible is that—

"A repetition of acts of the same character naturally indicates the same purpose in all of them; and if, when considered together, they cannot be reasonably explained without ascribing a particular motive to the perpetrator, such motive will be considered as prompting each act." New York Mut. L. Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997.

While the statements and declarations made by the plaintiff in error prior to the passage of the act under which the indictment was returned were not criminal, it was nevertheless competent for her at that time to oppose the war, and commit every act which was later prohibited, and

her intent and purpose did not depend in the slightest degree upon the state of the law at the time of her several utterances.

This disposes of all the assignments we deem worthy of notice, and, finding no error in the record, the judgment is affirmed.