## PARTAN et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. December 1, 1919.)

### No. 3386.

1. CRIMINAL LAW ☞37—DEFENSE OF ENTRAPMENT.

    If an officer of the law has reason to believe that a crime is being committed, he may lawfully proceed to ascertain whether those charged with the commission are actually committing it or are otherwise criminally implicated; the detection of crime being distinguished from inducing the wrongdoer to commit the crime detected.

2. CRIMINAL LAW ☞371(1)—EVIDENCE OF OTHER OFFENSES AS SHOWING INTENT.

    On trial of defendants for violating the Espionage Act of June 15, 1917, as amended by Act May 16, 1918 (Comp. St. 1918, § 10212c), by publishing and distributing seditious literature, admission of other publications distributed by them *held* not error, as limited to the question of intent.

3. CRIMINAL LAW ☞1158(3)—REVIEW OF COMPETENCY OF JURORS.

    The finding of the trial court upon the strength of a juryman's opinion, and his partiality or impartiality, will not be set aside by a reviewing court, unless error is manifest.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Criminal prosecution by the United States against A. J. Partan and W. N. Reivo. Judgment of conviction, and defendants bring error. Affirmed.

Thomas Mannix, of Portland, Or., and Austin Lewis, of San Francisco, Cal., for plaintiffs in error.

Bert E. Haney, U. S. Atty., and Barnett H. Goldstein, Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Plaintiffs in error were convicted under one of several counts of an indictment which charged them, together with two others, with violation of section 3 of the Espionage Act of June 15, 1917, 40 Stat. 219, c. 30, as amended by the Act of Congress of May 16, 1918, c. 75, § 1, 40 Stat. 553 (Comp. St. 1918, § 10212c).

We quote the material part of the statute:

"Whoever, when the United States is at war, shall willfully utter, print, write, or publish any disloyal, profane, scurrilous, or abusive language about * * * the military or naval forces of the United States, * * * intended to bring * * * the military or naval forces of the United States * * * into contempt, scorn, contumely, or disrepute. * * *"

The substance of the charge is that in October and November, 1918, defendants, with intent to violate the statute, gave away, sold, and distributed among certain persons, some of whom are named, a written document entitled "Bees and Butterflies," in which was contained the following reading matter:

"Young man; the lowest aim in your life is to be a soldier. A good soldier never tries to distinguish right from wrong. He never thinks; never reasons; he only obeys. * * * If he is ordered to fire down a crowded street when the poor are clamoring for bread, he obeys and sees the gray hairs of age

stained with red and the lifetide gushing from the breasts of women, feeling neither remorse nor sympathy. If he is ordered off as a firing squad to execute a hero or benefactor, he fires without hesitation, though he knows the bullet will pierce the noblest heart that ever beat in human breast. A good soldier is a blind, heartless, soulless, and murderous machine. He is not a man. He is not even a brute, for brutes only kill in self-defense. 'All that is human in him, all that is divine in him, all that constitutes the man in him, has been sworn away when he took the enlistment roll. * * * No man can fall lower than a soldier. It is a depth beneath which we cannot go. Keep the boys out of the army; it is hell. Down with the Army and Navy. We do not need killing institutions. We need life-giving institutions."

The principal point urged is that there is no substantial evidence of guilt. Omitting detailed statement, the testimony tended to show that the defendant Partan, a Finn by birth and naturalized American citizen, was the general manager of the Western Workmen's Publishing Society at Astoria, Or., and had general control of sales made from a bookstore kept by the Publishing Society, where the book "Bees and Butterflies" was sold. The defendant Reivo was editor of a paper in the Finnish language, called "Toveri," published at Astoria, and had an interest in the Workmen's Publishing Society already referred to, was employed by the members of that society, wrote articles upon the subject of Socialism, and had connection with the affairs of the society. Whether Reivo aided in the sale of the books, knowing their contents, was a question properly submitted to the jury. There was testimony that the Western Workmen's Publishing Society was a corporation at Astoria, Or., and that it published much literature wherein soldiers were described as hired mercenaries, used to kill all persons who dared to oppose the merciless and outrageous schemes of conquest of the masters of the soldiers, the capitalist class. Twenty-six copies of "Bees and Butterflies" were seized upon the book shelves of the Publishing Society. "Toveri" was the principal organ of the Western Workmen's Publishing Society, and advertised that it had a large circulation. Certain other publications were admitted in evidence as having been sold by the Western Workmen's Publishing Society; one was entitled "War— What For," published in the Finnish language, and under a heading of "A Confidential Word" contained such advice as the following:

"Follow the flag sounds brave and grand, very. Follow the flag stirs a savage passion, cunningly called patriotism. It is bait laid for fools, rot fed to mules by every tyrant, king, czar, and president at the head of governments used by the industrial ruling class."

The evidence was that Reivo was a Finn, naturalized, a member of the Socialist party, and was against the policy of sending soldiers abroad during the war with Germany, and was responsible for the policy of editorials appearing in "Toveri."

[1] We are asked to reverse the conviction upon the ground that the representatives of the United States induced the defendants to commit the crime charged. It is true that employés of the United States did inquire at the bookstore of the Publishing Company whether the book could be bought, and said they wanted to buy it; but there is evidence tending to show that the sales were made voluntarily by the clerks at the bookstore, and by the authority of defendants

and with their knowledge. We have had occasion before now to say that, if an officer of the law has reason to believe that a crime is being committed, he may proceed to ascertain whether those charged with the commission of the crime are actually committing it or are otherwise criminally implicated. The detection of a crime in its commission is far from inducing the wrongdoer to commit the crime detected. The District Court in its charge to the jury was very careful to protect the rights of the defendants by pointing out this distinction. Jung Quey v. United States, 222 Fed. 766, 138 C. C. A. 314.

[2] It is said the court erred in admitting in evidence a certain book upon Socialism, and various articles from newspapers which were published and distributed by the Western Workmen's Publishing Society after the United States and Germany were at war. Inasmuch as the evidence was limited in its bearing as tending to show the state of mind of the defendants, and the intention with which they may have done the particular acts charged against them, we find no error in the ruling. Herman v. United States, 257 Fed. 601, —— C. C. A. ——; Shidler v. United States, 257 Fed. 620, —— C. C. A. ——; Wells v. United States, 257 Fed. 605, —— C. C. A. ——; Rhuberg v. United States, 255 Fed. 865, —— C. C. A. ——; Coldwell v. United States, 256 Fed. 805, —— C. C. A. ——.

[3] Error is assigned upon the refusal of the court to allow challenges of defendants to certain jurors. After counsel had examined the jurors, the court, at some length, tested their state of mind, and found that each could weigh the testimony and render verdict without bias or prejudice of any kind. As the record clearly justifies the court in the overruling of the challenges, there is no merit in the assignment.

"The finding of the trial court upon the strength of the juryman's opinions and his partiality or impartiality ought not to be set aside by a reviewing court, unless the error is manifest, which it is far from being in this case." Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Reynolds v. United States, 98 U. S. 145, 25 L. Ed. 244; Dimmick v. United States, 121 Fed. 638, 57 C. C. A. 664.

A careful examination of the record shows that the jury was specially charged that the gist of the inquiry in relation to the circulation of the pamphlet was what responsibility the defendants or either of them sustained for putting the pamphlet into circulation, if it was found that the same had been circulated in the community about Astoria. The question of intent was analyzed, and the jury was charged that the specific purpose must have been to bring the military or naval forces of the United States into contempt, scorn, contumely, or disrepute, and that unless there was such specific intent acquittal must follow. Again, the court very properly instructed that the defendants were not charged with being Socialists, and could not be convicted merely because they were Socialists, and that the question whether they were or were not Socialists could have no consideration, except in so far as the jury might determine that the fact of their being Socialists might tend to evidence their intent to violate the statute under which they were being tried.

We cannot see that any rights of the defendants were in any way disregarded, and, as the record shows they had a fair trial, the judgment against them must be affirmed.

Affirmed.