## BOOHER ET AL. *v.* STATE OF INDIANA.

[No. 24,757.  Filed October 15, 1926.]

1. EVIDENCE.—*Evidence of other similar acts admissible to show intent.*—When it becomes material to show the intent with which an act was done, it is relevant for such purpose to prove other similar acts previously performed, and any fact which proves or tends to prove the particular intent is competent. p. 320.

2. CRIMINAL LAW.—*Evidence of prior crimes and other transactions relating to intoxicating liquor is admissible in prose-*

*cution for conspiracy to transport liquor in automobile, even though such acts did not then constitute felonies or crimes.*— In a prosecution for conspiracy to transport intoxicating liquor in an automobile, evidence of prior violations of the prohibition law and of other transactions relative to liquor is admissible as showing the intent with which the acts were committed which were the basis of the charge against the defendants, even though such prior violations did not constitute felonies or the other transactions at that time were not crimes at all.   p. 320.

3.   CRIMINAL LAW.—*Where evidence should be limited to the purpose for which it was admitted, it will be presumed that this was done.*—Where, in a prosecution for conspiracy to commit the felony of transporting intoxicating liquor in an automobile, evidence was admitted of prior violations of the prohibition law and of other transactions relating to intoxicating liquor, for the purpose of showing defendants' intent in the acts with which they were charged, it being the duty of the court to limit the jury's consideration of such evidence to the purpose for which it was competent, it will be presumed that this was done, the record showing nothing to the contrary. p. 320.

4.   CONSPIRACY.—*May be proved by circumstantial evidence tending to show a common purpose in commission of various acts pursuant to an agreement.*—In a prosecution for conspiracy to commit a felony (§2882 Burns 1926), proof of a formal conspiracy is not essential, but the existence of the conspiracy may be established by circumstantial evidence, as by proof of acts done in the consummation of an apparent common purpose pursuant to an intelligent and deliberate agreement. p. 322.

5.   CONSPIRACY.—*Evidence held sufficient to sustain conviction for conspiracy to transport intoxicating liquor in automobile.*— In a prosecution for conspiracy to transport intoxicating liquor in an automobile, where the evidence of the conspiracy was wholly circumstantial, evidence that defendants had been guilty of manufacturing liquor on a large scale, transporting and selling it, was sufficient to sustain a conviction.   p. 322.

From Greene Circuit Court; *Thomas VanBuskirk,* Judge.

Earl Booher and another were convicted of conspiracy to transport intoxicating liquor in an automobile, and they appeal.   *Affirmed.*

*Cox, Welliver &. Walsh* and *James M. Hudson,* for appellants.

*U. S. Lesh,* Attorney-General and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

GEMMILL, J.—The appellants have appealed from a judgment rendered against them in the Greene Circuit Court where they were prosecuted on the charge of conspiracy to transport intoxicating liquor in an automobile. The crime of conspiracy to commit a felony is defined in §641, Acts 1905 p. 584, §2882 Burns 1926. The law making it a felony to transport intoxicating liquor in an automobile is in §1, Acts 1923 p. 108. This law went into effect on March 1, 1923. The trial was by jury. The overruling of their motion for a new trial is assigned as error. The causes for a new trial are alleged errors on rulings in admitting and refusing to strike out certain evidence, and the sufficiency of the evidence to sustain the verdict.

From the evidence, it appears: That members of a horsethief detective association had found white mule whisky, about three miles northeast of Linton, buried in the ground near a public highway. On the night of November 15, 1923, members of said association arrested the appellants, who were brothers, at that place, where the appellants had driven an automobile. Just prior to the arrests, Ogle Booher took a jug of whisky from the place where it was buried and Earl Booher was only a short distance from him when they learned that they were being watched. Ogle Booher threw the jug of whisky and ran to the automobile, and he said at the time of the arrest: "Well, boys, I have no complaint to make. The road turns on you some day." The whisky was taken to the police headquarters at Linton. Another jug of white mule whisky was found about 200 yards from the place where one of the ap-

pellants took the jug from the ground. About seventy-
five holes were found near the road where something
had been buried. One of the appellants had bought a
great many pint and quart bottles at a pharmacy in
Linton within the last year. Appellants denied trans-
porting intoxicating liquor in an automobile and denied
any intention of doing so at that time. One of them
testified that the whisky had been buried there for his
own use, and that it had been planted there by the man
from whom it had been bought. It was admitted by
defendants that their reputations in the vicinity of
Linton where they lived were bad for morality. Evi-
dence as to certain former acts of appellants and cer-
tain declarations made by them will be noticed later
herein.

It is contended by appellants that the court erred in
admitting and refusing to strike out the testimony of
one witness for the state to the effect that three years
before the time he was testifying, he was with each of
the defendants in an automobile when they had intoxi-
cating liquors and "hauled it a number of places," and
he was with each of the defendants in a car when they
hauled intoxicating liquors from Linton to "a camp
over on White river at the covered bridge down here,"
and was in a car with each of the defendants when
they hauled intoxicating liquors out on parties "to be
driven around in cars and drunk"; and in admitting
and refusing to strike out the testimony of another wit-
ness for the state to the effect that about fifteen to
eighteen months before the time he was testifying, he
was in an automobile with both of the defendants along
the Buck Creek road northeast of Linton where, in the
language of the witness, "we went out there to have
a few drinks probably two hundred yards before you
come to the turn back where the boys were arrested
on South side of the road," where one of the defend-

ants got out and "got a half gallon of red whisky and we drove around through the country and drunk probably maybe not as much as a quart and came back to the place and started south about three or four hundred yards from where we first got the half-gallon going back south they buried it there again on the East side of the road." It is also insisted that the court erred in admitting and refusing to strike out the testimony of the said second witness that eighteen months prior to the date on which he was testifying, he had a conversation with the defendant, Ogle Booher, in which the latter stated that he had a falling out with one Roy Smith who used to "bootleg" with him and that he, Ogle Booher, and his brother, Earl Booher, "was going to start selling whisky together"; and that within two years prior to the date on which he was testifying, he had a conversation with Ogle Booher in which he said that he and his brother Earl had a still up near Linton and that it was a good one and they were going to make whisky and had plenty of whisky around Linton, that they went up there, starting about twelve o'clock at night and brought their whisky back about daybreak in the morning, and that Roy Cook at the Elkhorn Drug Store was furnishing him what bottles he used for that whisky; and that within a year prior to the date on which the witness was testifying, he had a conversation with Earl Booher in which said Earl Booher told him the way or manner they distributed their liquor along the country roads.

Appellants say that there could have been no conspiracy to commit the felony of transporting liquor prior to March 1, 1923, for the reason that not until that date was it made a felony to transport liquor; and that the testimony to which objection was made was not relevant or material as the acts or declarations of conspirators occurred at least two years before the

alleged conspiracy, and that acts and declarations must be the things done about conspiring to transport liquor in violation of the act of March 1, 1923. Also, they contend that if this evidence had been competent to show intent or motive, it would, on appeal, be presumed to be harmful in the absence of a clear showing that the court had limited its effect by instruction, which it is asserted was not done.

The evidence in conspiracy cases is permitted to take a wide range. In regard to evidence as to former acts for the purpose of showing intent, in *Bottomly*

1-3. v. *United States* (1840), 1 Story 135, 145, Story, J., said: "In most cases of conspiracy and fraud, the question of intent or purpose, or design in the act done, whether innocent or illegal, whether honest or fraudulent, rarely admits of direct and positive proof; but is to be deduced from various circumstances of more or less stringency, * * *. And in all cases where the guilt of the party depends upon the intent, purpose or design with which the act is done, or upon his guilty knowledge thereof, I understand it to be a general rule that collateral facts may be examined into, in which he bore a part, for the purpose of establishing such guilty intent, design, purpose or knowledge." And it is now a well-recognized rule that when it becomes material to show the intent which inspired an act, it is relevant for such purpose to prove other similar acts previously performed. It is not necessary that past occurrences or acts admitted to show intent in a criminal cause must have been crimes. In *People* v. *Lloyd* (1922), 304 Ill. 23, 136 N. E. 505, in a prosecution for advocating the overthrow of the government, it was held that proof of acts of certain defendants before a certain date, because there was no statute of the State of Illinois then declaring such acts to be unlawful, did not constitute error. In *Equi* v. *United*

*States* (1919), 261 Fed. 53, 171 C. C. A. 649, in which there was a prosecution for violation of the Espionage Act, statements made in speeches by the defendant prior to the passage of the act were held admissible on the question of purpose and intent where properly limited. The same principle is stated in *Rhuberg* v. *United States* (1919), 255 Fed. 865, 167 C. C. A. 185, and *Herman* v. *United States* (1919), 257 Fed. 601, 168 C. C. A. 551. In 3 Greenleaf, Evidence (16th ed.) 21, §15, it is said: "The like evidence of acts and declarations at other times in proof of the character and intent of the principal fact charged, has been admitted in trials for arson, libel, malicious mischief, forgery, conspiracy, and other crimes." In Gillette, Indirect and Collateral Evidence 82, §59, the following is stated: "Among the circumstances which may be judicially considered as leading to important and well grounded presumptions are 'motives to crime, declarations or acts indicative of guilty consciousness or intention, and preparations for the commission of crime.' The prosecution is entitled to put in evidence circumstances which suggest a possible motive on the part of the defendant, although there is no direct evidence that he was acting on such motive." Any fact which proves or tends to prove the particular intent is competent. 16 C. J. 589, §1137. The period of time within which collateral transactions offered to show a guilty intent must have occurred is largely discretionary with the court. 3 Greenleaf, Evidence (16th ed.) 21, §15; 16 C. J. 590, §1137; *Spurr* v. *United States* (1898), 87 Fed. 701, 31 C. C. A. 202. The remoteness of time of such occurrences to show intent goes solely to their weight and not to their admissibility. Generally, only those declarations are admissible which were made during the progress of the conspiracy and in furtherance of its objects. How-

ever, declarations of an alleged conspirator, made before the existence of the alleged conspiracy, are admissible in evidence against the other conspirators, for the purpose of illustrating motive, purpose, and intent of the associates in crime. The fact that the evidence, to which objection was made, of acts of transportation of liquor and similar acts and of declarations relates to times when it was not a criminal offense to transport intoxicating liquor and to other times when it was only a misdemeanor to do so, did not make such evidence inadmissible. The court should have limited its consideration by the jury to the purpose for which it was competent and as the instructions are not in the record by bill of exceptions, it will be presumed that this was done.

Appellants claim that the verdict is not sustained by sufficient evidence. The question as to what the appellants intended to do with the intoxicating liquor was a vital one to be determined by the jury. Proof of a formal conspiracy is not essential, but the existence of the conspiracy may be established by circumstantial evidence, as by proof of an act done in the consummation of an apparent common purpose pursuant to an intelligent and deliberate agreement. Ewbank, Indiana Trial Evidence §816. In addition to the evidence which has been mentioned, it was shown that in the fall or early winter, before the trial in January, Ogle Booher had said he was in the "bootleg" business, and witness testified that he bought a gallon of liquor of him, but the sale was not consummated; and at the time when the liquor was to be delivered to the purchaser, Earl Booher was with his brother, Ogle Booher; that within the last two years they had sold whisky; and in the fall before the trial, the appellants said they had a still where they were making about sixty-five gallons of whisky a day, and

that they were the "king of the bootleggers." The
evidence was such that the jury was warranted in re-
turning a verdict finding them guilty.

Judgment affirmed.