## KIRCHNER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.   December 5, 1918.)

No. 1655.

1. WAR ☞4—ESPIONAGE ACT—FALSE REPORTS.
   It is not essential that false reports and statements, to constitute an offense under Espionage Act, tit. 1, § 3 (Comp. St. 1918, § 10212c), should be made in the presence of persons who are, or are liable to be, selected for military or naval service.

2. WAR ☞4—ESPIONAGE ACT—TRIAL—EVIDENCE OF INTENT.
   On a prosecution for making false reports and statements, in violation of Espionage Act, other statements than those charged, but of similar character, made by defendant at different times and places, even before the passage of the act, may be shown on the question of intent.

3. CRIMINAL LAW ☞309—EVIDENCE—PRESUMPTION OF GOOD CHARACTER.
   On the trial of a criminal case, where there is no evidence of defendant's character, there is no presumption of his good character.

4. CRIMINAL LAW ☞24—PRESUMPTION OF INTENT.
   It is not error in a criminal case to instruct that defendant is presumed to have intended what he did.

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Criminal prosecution by the United States against H. E. Kirchner. Judgment of conviction, and defendant brings error.   Affirmed.

William Beard, of Parkersburg, W. Va., for plaintiff in error.

Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va. (Charles N. Campbell, Asst. U. S. Atty., of Martinsburg, W. Va., and J. J. P. O'Brien, Asst. U. S. Atty., of Wheeling, W. Va., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge.   On January 14, 1918, the grand jury of the United States District Court for the Northern District of West Virginia, at Parkersburg, returned the following indictment:

"The grand jurors of the United States, duly impaneled, sworn, and charged to inquire within and for the said district, upon their oaths present that H. E. Kirchner on the —— —— day of ——––, 1917, and after the 17th day of June, 1917, the United States then and there being at war with the imperial German government, did, at Elizabeth, in the Northern district of West Virginia, willfully, unlawfully, and feloniously make and convey to divers persons to the grand jurors unknown, some of whom said persons were at the time aforesaid between the ages of 21 and 31 years, and were then and there subject to be called into the service of the United States Army, under the provisions of the Selective Service Act, an act of Congress approved on the 18th day of May, 1917 [40 Stat. 76, c. 15 (Comp. St. 1918, §§ 2019a, 2019b, 2044a–2044k)], certain false statements regarding the United States government, the army of the United States, the bonds of the United States then being offered to the citizens of the United States for sale to promote the success of the United States in the prosecution of the war then being conducted against the imperial German government, which said statements in their entirety are unknown to the grand jurors, but which in substance were to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the effect that the United States government in the prosecution of the said war was corrupt, and controlled by the moneyed interests, that the Selective Service Act aforesaid was unconstitutional, that the people of the United States could never meet the expense of the war with Germany, that the people of the United States should not buy the United States bonds then being offered for sale, he, the said H. E. Kirchner, then and there knowing said statements to be false, with intent to interfere with the operation and success of the military and naval forces of the United States in the said war with the imperial German government, and to promote the success of the imperial German government in said war, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.                          Stuart W. Walker, U. S. Attorney."

The indictment was founded on section 3, title 1, of the original Espionage Act of June 15, 1917, c. 30, 40 Stat. 219 (Comp. St. 1918, § 10212c):

"Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

The charge of the trial court is reported in the series of bulletins, issued by the Department of Justice, known as "Interpretations of War Statutes," bulletin No. 69. The defendant below demurred to the indictment, and saved an exception to the order overruling the demurrer.

The first contention on the demurrer by counsel for defendant is based on the supposition that the indictment charges the defendant merely with the utterance of opinions. The indictment alleges that the defendant had said in substance that the United States government in the prosecution of the war was corrupt and controlled by the moneyed interests. Certainly such an assertion could be made and intended as a statement of fact. There is nothing on the face of the indictment on which to found an argument that the defendant was, in respect to the foregoing assertion, being prosecuted for an expression of opinion.

The assertion that the people of the United States could never meet the expenses of the war must be treated as a mere expression of opinion, and the statement that the people should not buy United States bonds is of course not a statement of fact. It is unnecessary to decide whether the statement that the Selective Service Act is unconstitutional be a statement of fact or of opinion. The indictment contains at least one clear statement of fact alleged to be false; the remaining statements alleged to have been made may properly be treated as surplusage.

[1] The remaining objections to the indictment are founded on the theory that the false statement must be made to, or at least within the hearing of, persons who are, or who are liable to become, members of the military or naval forces. We find no warrant for this contention in the statute. The success of the military and naval forces is aided

or hampered in large measure by the spirit of the civilian population. Shipbuilders, munition makers, coal miners, lumber producers, buyers and sellers of Liberty Bonds and War Savings Stamps, women and girls making Red Cross supplies, merely begin the list of civilians whose patriotic ardor is almost as essential to the success of our military and naval forces as is the spirit of the men composing these forces. Excepting only those who are too unintelligent to understand, there is no class of our population on whom some false statements may not have a pernicious effect in the direction of restraining patriotic endeavor. In drawing the indictment it was unnecessary for the pleader to negative the fact that the statements alleged against the defendant were made only in the hearing of those too unintelligent to understand them. The return of the indictment necessarily imported that the defendant's statements were made to some person who understood them and repeated them before the grand jury. It follows that, unless the false statement be made only to children of very tender years or to imbeciles, the intent to interfere with the operation or success of the military or naval forces may exist.

The crime denounced is not that of interfering with the success of our forces. If the false statement is willfully made with the intent denounced, the offense is complete; and if the effect of the statement may reasonably be to chill the ardor or restrain the efforts of any of those who hear the statement, the proscribed intent may exist. The statute does not discriminate between an intent to directly interfere, and an intent to indirectly interfere, with the operation or success of the military forces; and hence we have no reason for making such distinction.

In the bulletins, "Interpretations of War Statutes," mentioned above, are numerous expressions of judicial opinion as to this question. In U. S. v. Harper, No. 76, Judge Jack said:

"Neither is it necessary that the government prove that such statements were made in the presence of persons liable to military service. This latter phrase in the indictment may be regarded as surplusage."

## In U. S. v. Frerichs, No. 85, Judge Munger said:

"If one were to say to those being solicited to subscribe for bonds to support the war, that the bonds were selling on the Stock Exchange at 50 cents on the dollar when they were selling at par, or near that, and that was said with the intent that it would discourage people from subscribing for the bonds, and thereby render difficult the support of the armies in the prosecution of the war, it could well be said that the intent of that man was to interfere with the success of and the operation of the naval and military forces of the United States."

## In U. S. v. Zittel, No. 90, Judge Neterer said:

"A person would be guilty of the violation of the provisions of this act by making false reports or false statements with intent to interfere with the operation or success of the military, without making the reports or statements directly to men in uniform or men registered and held in reserve.

"There are many activities connected with the supply of the military and naval forces, and if false statements and reports are made with intent to interfere with any of the operative agencies which supply the military or naval forces and are necessary for their successful operation, it would be a

violation of this act. For instance, transportation is necessary, and if a person should willfully make false reports or false statements with the intent to interfere with the ship construction, or with the intention of interfering with supplying the vessels, when constructed, with seamen, or with any of the active agencies which are necessary to promote the success of the military and naval forces in whatever respect, if any disclosed by the evidence, it would be a violation of this act."

In U. S. v. Taubert, No. 108, Judge Aldrich said:

"Now, when a nation engages in war, it is important that it should not be hindered—that it should not be impeded or embarrassed or retarded or checked or slackened—by internal obstruction; and that means not only in respect to actual war activities in the field, but it must not be hindered in its activities in the direction of preparedness.  *  *  *

"I have told you that the law is a constitutional law, that it is one enacted in war times, to the end that the war may be vigorously prosecuted; and it means that the war shall not be obstructed either in its active military operations or in respect to the necessary things that must be done in order to sustain the military arm.  *  *  *"

In U. S. v. Stephens, No. 116 (S. C. 121), Judge Woolley said:

"A careful study of the Espionage Act and of section 3 before amendment satisfies me that the offense defined is not limited to a direct interference with the operation and success of military forces. The controlling word of the statute is 'interference,' and if the intent with which false statements are made is to work such interference it matters little whether that end is reached directly or indirectly. Physical contact with military operations is not necessary to work interference with them. Every one knows this now. Congress knew it when it enacted the statute. Interference being the thing, the processes by which it is achieved are not regarded as of importance."

In U. S. v. Weinsberg, No. 123, Judge Morris said:

"I wish to say in the beginning that when we speak of interfering with the success of the military forces of the United States it is my view that one can interfere with the success of the military forces of the country by destroying, or weakening, or undermining, any recognized and properly adapted instrumentality or organization which effectively aids in and contributes to that success.  *  *  *"

In U. S. v. Binder, No. 126, Judge Garvin said:

"Now, it is important for you to bear in mind that it is not necessary, and I charge you this as matter of law, that any of the sentiments contained in this book should have been actually, by the defendant, brought to the direct personal notice of any one in the military or naval service of the United States, including the National Army, because you can readily understand that the effect which the government charges this defendant intended the publication should have might quite as easily be brought about by bringing sentiments of this sort to the notice of friends and relatives of those who are actually in or who were expecting to be connected with the military or naval service."

See, also, U. S. v. Nagler, No. 127.

We think it unnecessary to discuss the remaining arguments on the demurrer made by counsel for defendant. In passing, however, we should say that we regard as surplusage the allegation in the indictment that the statements made by the defendant were made to persons subject to be called into the military service.

[2] It is next urged that the trial court erred in admitting evidence of statements, similar in nature to those set out in the indictment, made

by the defendant in the Southern district of West Virginia and before the Espionage Law was enacted. In admitting this evidence the trial court distinctly and more than once advised the jury that this testimony was admitted only as bearing on the intent of the defendant in making the statements set out in the indictment. The evidence in question does have a tendency to prove that the defendant, if he made the statements charged, made them with the intent charged. We can see no force in this contention.

It is argued that the trial court committed error in calling the attention of the jury to the Act of April 22, 1898, c. 187, making all able-bodied citizens and certain persons of foreign birth between the ages of 18 and 45 years liable to military service. 30 Stat. 361. Counsel contends that this statute was repealed by the Draft Act of May 18, 1917. We think it unnecessary to decide the question. The action of the court was, in our opinion, unnecessary; but it did not in any event constitute reversible error. If our construction of the third section of the Espionage Act is sound, it is entirely immaterial whether all able-bodied male citizens between 18 and 45 years of age were or were not in January, 1918, liable to military service.

[3] After the testimony was all in, the defendant's counsel asked the court to give an instruction, reading in part as follows:

"The court instructs the jury that the character of an accused person is in law presumed to be good, and this alone may be sufficient to create a reasonable doubt of guilt. * * *"

There had been no evidence of good character offered or given, and the trial court refused to give the instruction. It seems unnecessary to say more of this exception than that the Supreme Court has decided that there is no such presumption as that asserted in this prayer. Greer v. U. S., 245 U. S. 559, 38 Sup. Ct. 209, 62 L. Ed. 469.

[4] It is next objected that the trial court added to an instruction, offered by the defendant and given, the following:

"The law presumes that a man intends that which he does, and it is from the statements made and the acts done that his intent is to be determined."

The jury knew the defendant to be sane and adult; the statements made by him and testified to by many witnesses were made knowingly and intentionally. The presumption in the mind of the trial court could have been more fully expressed; but we cannot see, in the circumstances existing, that the defendant was prejudiced. There is some comparatively recent authority to the effect that the assertion that a sane man intends the natural and probable consequences of his own acts, knowingly done, is not a true presumption of law. See Thayer's Preliminary Treatise, p. 335; 2 Chamberlayne, Ev. §§ 1166, 1167; 7 Ency. Ev. 592 et seq.; 16 Cyc. 1081; U. S. v. Rutherford, Bulletin No. 119; U. S. v. Fontana, Bulletin No. 148. However, we need not discuss this question. The rulings of the Supreme Court forbid that the exception now under consideration be sustained. See Allen v. U. S., 164 U. S. 492, 496, 17 Sup. Ct. 154, 155 (41 L. Ed. 528), where the trial court had in the course of its charge said:

"A person is presumed to intend what he does."

255 F.—20

In affirming Mr. Justice Brown said:

"This is nothing more than a statement of the familiar proposition that every man is presumed to intend the natural and probable consequences of his own act."

In Agnew v. U. S., 165 U. S. 36, 50, 53, 17 Sup. Ct. 235, 241, 242 (41 L. Ed. 624), Mr. Chief Justice Fuller said:

"The Circuit Court, in this part of the charge, was dealing with the intent to injure and defraud the bank, and rightly instructed the jury that, if they found certain facts, such intent was necessarily to be inferred therefrom. This was in application of the presumption that a person intends the natural and probable consequences of acts intentionally done, and that an unlawful act implies an unlawful intent."

And again, the trial court having charged, inter alia:

"It is a well-settled rule, which the law applies in both criminal and civil cases, that the intent is presumed and inferred from the result of the action"

—it is said:

"In our opinion there was evidence tending to establish a state of case justifying the giving of this instruction, which was unexceptionable as matter of law."

In Reynolds v. U. S., 98 U. S. 145, 167 (25 L. Ed. 244), it is said:

"A criminal intent is generally an element of crime, but every man is presumed to intend the necessary and legitimate consequences of what he knowingly does."

See, also, Hanauer v. Doane, 12 Wall. 342, 347, 20 L. Ed. 439.

The ruling of the trial court on the motion to set aside the verdict presents no question for consideration by this court. Holmgren v. U. S., 217 U. S. 509, 521, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Prichard v. Budd, 76 Fed. 710, 716, 22 C. C. A. 504.

We can find no tenable ground in support of the motion in arrest.

The judgment below must be affirmed.