HICKSON v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1919.)

No. 1709.

1. WAR ⬌4—ESPIONAGE ACT—INDICTMENT FOR VIOLATION.
   In an indictment for violation of Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), by willfully making false reports or statements with intent to interfere with the operation or success of the military or naval operations of the United States, when the United States was at war, it is unnecessary to aver that such statements were made in the presence or hearing of persons in the military or naval service, or subject to military or naval duty.

2. WAR ⬌4—ESPIONAGE ACT—VIOLATION.
   Evidence *held* to sustain a verdict finding defendant guilty of violation of Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c) by making false statements with intent to interfere with the military or naval operations of the United States when at war.

3. CONSTITUTIONAL LAW ⬌90—WAR ⬌4—ESPIONAGE ACT—FREEDOM OF SPEECH.
   The Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), is not unconstitutional in making criminal in time of war statements or utterances which in time of peace might be within the constitutional rights of a citizen.

4. CRIMINAL LAW ⬌1218—EXECUTION OF SENTENCE—FEDERAL COURTS.
   Unless a defendant convicted of crime is sentenced to imprisonment for a period longer than one year, or to hard labor, a federal court is without authority to order the sentence executed in a state penitentiary.

5. CRIMINAL LAW ⬌1188 — UNAUTHORIZED SENTENCE — CORRECTION BY APPELLATE COURT.
   Where a federal court has exceeded its authority in the sentence imposed on a convicted defendant, the error may be corrected by the appellate court by remanding the cause for appropriate sentence.

In Error to the District Court of the United States for the Western District of South Carolina, at Rock Hill; Charles A. Woods, Judge.

Criminal prosecution by the United States against F. C. Hickson. Judgment of conviction, and defendant brings error. Reversed with directions.

Cornelius Otts, of Spartanburg, S. C. (J. K. Henry, of Chester, S. C., on the brief), for plaintiff in error.

C. G. Wyche, Asst. U. S. Atty., of Greenville (J. William Thurmond, U. S. Atty., of Edgefield, S. C., on the brief), for the United States.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge. This was a criminal action instituted in the District Court of the United States for the Western District of South Carolina.

The defendant was tried on an indictment containing seven counts, in which he was charged with willfully, unlawfully, and feloniously making and conveying certain false reports and statements while the United States was at war with the Imperial German government, with intent to interfere with the operations and success of the military and naval forces of the United States, and to promote the success of the enemies of the United States.

On motion of counsel, the court directed a verdict of not guilty on the second, fourth, and fifth counts of the indictment and submitted to the jury the first, third, sixth and seventh counts, and counsel for defendant, took an exception to the refusal of the Court to direct a verdict of not guilty as to all the counts of the indictment. The jury returned a verdict of not guilty on the third and seventh counts, and returned a verdict of guilty on the first and sixth counts of the indictment.

The statute under which plaintiff was convicted is what is known as the Espionage Act of June 15, 1917, c. 30, § 3, 40 Stat. 219 (Comp. St. 1918, § 10212c) and is in the following language:

"Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

[1] The first four assignments of error relate to the demurrer to the indictment and the motion to direct a verdict. It was contended that the indictment did not allege and that the proof did not show that the remarks made or the newspaper article were delivered to any member of the military or naval forces or those subject to draft. The defendant's contention is that the indictment should have alleged that the language used was directed to or used in the presence of enlisted men of the army or navy of the United States or those within the draft age. We think this question was disposed of adversely to the contention of defendant's counsel by this court in the case of H. E. Kirchner v. United States, 255 Fed. 301, —— C. C. A. ——. The court in that case, in passing upon this question, among other things, said:

"The remaining objections to the indictment are founded on the theory that the false statement must be made to, or at least within the hearing of, persons who are, or who are liable to become, members of the military or naval forces. We find no warrant for this contention in the statute. The success of the military and naval forces is aided or hampered in large measure by the spirits of the civilian population. Shipbuilders, munition makers, coal miners, lumber producers, buyers and sellers of Liberty Bonds and War Saving Stamps, women and girls making Red Cross supplies, merely begin the list of civilians whose patriotic ardor is almost as essential to the success of our military and naval forces as is the spirit of the men composing these forces. Excepting only those who are too unintelligent to understand, there is no class of our population on whom some false statements may not have a pernicious effect in the direction of restraining patriotic endeavor. In

drawing the indictment it was unnecessary for the pleader to negative the fact that the statements alleged against the defendant were made only in the hearing of those too unintelligent to understand them. The return of the indictment necessarily imported that the defendant's statements were made to some person who understood them, and repeated them before the grand jury. It follows that, unless the false statement be made only to children of very tender years or to imbeciles, the intent to interfere with the operation or success of the military or naval forces may exist.

"The crime denounced is not that of interfering with the success of our forces. If the false statement is willfully made with the intent denounced, the offense is complete; and if the effect of the statement may reasonably be to chill the ardor or restrain the efforts of any of those who hear the statement, the prescribed intent may exist. The statute does not discriminate between an intent to directly interfere * * * with the operation or success of the military forces. And hence we have no reason for making such distinction."

In support of its contention the court cited a number of other decisions reported in the bulletins entitled "Interpretation of War Statutes."

The fifth assignment is to the effect:

[2] (a) That there was no proof of any false statement in the alleged newspaper article set out in the sixth count, or

(b) That any word or utterance of defendant was made with intent to create mutiny, disloyalty, or insubordination in the military or naval forces of the United States, and it is urged that the court below erred in not directing a verdict in favor of the defendant.

On these grounds the court below in refusing the motion for a new trial said:

"I could not resist the conclusion, however, that it was fair to submit it to the jury, that I was obliged to submit it to the jury, whether when the defendant said: 'When the flag of my country is never sacred except when used as the red flag in the bull-pen to tease the beast to fight,' that that meant certainly by the strongest insinuation and inference, that that meant that the flag of his country had been used to tease the people into patriotism and into the spirit of fighting, that it had been falsely presented to them, that the issue had been so falsely represented that the flag was used to tease them into the fighting spirit. That was a legitimate inference the jury might draw, and I could not see my way clear to withdraw that from the jury."

As to this assignment we are of opinion that it was a question for the jury to decide as to whether the following statement was true.

"It was wrong for this country to be drawn into the war, and that Woodrow Wilson was the man that did it; that it was a money-making propaganda, and the steel men, and the big men, and the big office holders were the ones that were getting the benefit of it, and that he bet Woodrow Wilson was getting his drag, and that he should be assassinated; that it was wrong for one man to say what the whole country should do."

This was an unwarranted and reckless statement, and one that should never be indulged in by a citizen of this government.

· The jury having passed upon this question, we are not inclined to interfere with the verdict.

By the sixth assignment is insisted that the evidence did not warrant a verdict of "Guilty." This was also a question of fact as to the intent of the defendant at the time he made the remark, concerning which witnesses testified. The court's charge bearing on this point was

fair and impartial, leaving, as it did, the question of intent to be determined by the jury. The jury having found the facts in pursuance of the instructions given we think the assignment is without merit.

The seventh assignment relates to the refusal of the court below to grant a new trial on the ground that the jury was unduly influenced in that one juror was biased and incapable of rendering a true verdict.

The learned judge, who heard this case, in referring to this phase of the question, said:

"All that I think that the remark in question meant was that this was a case in which soldiers were particularly interested. They were particularly interested in finding a true verdict, that those who had done anything to interfere with the military operations of the government should be punished for it. It did not imply that those soldiers were interested in having a false or prejudiced verdict. It would have been better perhaps for him not to have said anything about it, and as it turned out it would have been better for Mr. Thurmond had he not made any interrogation. I cannot think there was any impropriety in the course he pursued. If the juror had been accused of anything that was improper I should have had him summoned here, but I do not think there was anything improper in his conduct."

We think that the above-statement of the court is a full and complete answer to the contention of the defendant as respects this point.

[3] The eighth, ninth, and eleventh assignments of error are based on the ground that the Espionage Act as interpreted by the court below is unconstitutional. This question was decided by the Supreme Court of the United States in the case of Schenck v. United States 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470 (decided March 3, 1919, and reported in the advanced sheets). In that case the court held that the law was constitutional. Justice Holmes in speaking for the court, among other things, said:

"But it is said, suppose that that was the tendency of this circular, it is protected by the First Amendment to the Constitution. Two of the strongest expressions are said to be quoted respectively from well-known public men. It well may be that the prohibition of laws abridging the freedom of speech is not confined to previous restraints, although to prevent them may have been the main purpose, as intimated in Patterson v. Colorado, 205 U. S. 454, 462, 27 Sup. Ct. 556, 51 L. Ed. 879, 10 Ann. Cas. 689. We admit that in many places and in ordinary times the defendants in saying all that was said in the circular would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. Aikens v. Wisconsin, 195 U. S. 194, 205, 206, 25 Sup. Ct. 3, 49 L. Ed. 154. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force. Gompers v. Buck Stove & Range Co., 221 U. S. 418, 439, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. The question in every case is whether the words used are used in such circumstances as are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. When a nation is at war many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight, and that no court could regard them as protected by any constitutional right. It seems to be admitted that if an actual obstruction of the recruiting service were proved, liability for words that produced that effect might be enforced. The statute of 1917 in section 4 * * * punishes conspiracies to obstruct as well as actual obstruction. If the act (speaking or circulating a paper), its tendency and the

intent with which it is done are the same, we perceive no ground for saying that success alone warrants making the act a crime. Goldman v. United States, 245 U. S. 474, 477, 38 Sup. Ct. 166, 62 L. Ed. 410. Indeed that case might be said to dispose of the present contention if the precedent covers all media concludendi. But as the right to free speech was not referred to specially, we have thought fit to add a few words."

This point was also decided March 10, 1919, in Jacob Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 240, 63 L. Ed. 561, Advanced Sheets. Mr. Justice Holmes, in speaking for the court, said:

"With regard to that argument we think it necessary to add what has been said in Schenck v. United States, only that the First Amendment, while prohibiting legislation against free speech as such, cannot have been, and obviously was not, intended to give immunity for every possible use of language. Robertson v. Baldwin, 165 U. S. 275, 281, 17 Sup. Ct. 326, 41 L. Ed. 715. We venture to believe that neither Hamilton nor Madison, nor any other competent person then or later, ever supposed that to make criminal the counseling of a murder within the jurisdiction of Congress would be an unconstitutional interference with free speech."

The tenth assignment of error is to the effect that the jury was inconsistent in finding the defendant not guilty as charged in the third and seventh counts, and at the same time finding him guilty in the first and sixth counts. This question was not presented to the court below. Indeed, it appears to be an afterthought of counsel. These crimes are separate and distinct, and the findings of the jury as to one cannot be said to be inconsistent with its findings as to the others.

A careful examination of the record shows that the jury was amply warranted in finding as it did. The charge of the learned judge who heard the case was fair and impartial. Therefore we are impelled to the conclusion that there is no error as respects the rulings of the court below.

[4] In conclusion, there is one matter not mentioned in the assignments of error, to which we will refer briefly. It appears that the defendant was sentenced to the penitentiary for a term of six months. We think this was unauthorized. This question was passed upon in the case of In re Bonner, Petitioner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149. The court in discussing this phase of the question, said:

"Section 5356 of the Revised Statutes of the United States [Comp. St. § 10460], under which the defendant was indicted and convicted, prescribes as a punishment for the offenses designated fine or imprisonment—the fine not to exceed $1,000 and the imprisonment not more than one year, or by both such fine and imprisonment. Such imprisonment cannot be enforced in a state penitentiary. Its limitation, being to one year, must be enforced elsewhere. Section 5541 of the Revised Statutes [section 10527] provides that: 'In every case where any person convicted of any offense against the United States is sentenced to imprisonment for a period longer than one year, the court by which the sentence is passed may order the same to be executed in any state jail or penitentiary within the district or state where such court is held, the use of which jail or penitentiary is allowed by the Legislature of the state for that purpose.' And section 5542 [section 10528] provides for a similar imprisonment in a state jail or penitentiary where the person has been convicted of any offense against the United States and sentenced to imprisonment and confinement at hard labor. It follows that the court had no jurisdiction to order an imprisonment, when the place is not specified in the law, to be executed in a penitentiary when the imprisonment is not ordered for a period longer than one year or at hard labor. The statute is equivalent to a direct denial of any authority on the part of the court to direct that imprisonment

be executed in a penitentiary. in any cases other than those specified. Whatever discretion, therefore, the court may possess, in prescribing the extent of imprisonment as a punishment for the offense committed, it cannot, in specifying the place of imprisonment, name one of these institutions. This has been expressly adjudged in Re Mills, 135 U. S. 263, 270 [10 Sup. Ct. 762, 34 L. Ed. 107], which, in one part of it, presents features in all respects similar to those of the present case."

[5] In the case of Mitchell v. United States, 196 Fed. 874, 116 C. C. A. 436, the Circuit Court of Appeals for the Ninth Circuit, in referring to the question as to whether one under circumstances like the case at bar is entitled to a final discharge, said:

"But the error in the judgment does not entitle the plaintiff in error to his discharge, as it might if the question were presented on a writ of habeas corpus. The case having come to this court on writ of error, this court, while reversing the judgment of the court below, may remand the cause to that court, with directions to enter the appropriate judgment. Murphy v. Massachusetts, 177 U. S. 155, 20 Sup. Ct. 639, 44 L. Ed. 711; Haynes v. United States, 101 Fed. 817, 42 C. C. A. 34; Whitworth v. United States, 114 Fed. 302, 52 C. C. A. 214."

As we have stated, the other assignments of error as to the rulings of the court below are without merit. However, from what we have stated as to this point, it necessarily follows that the judgment of the court below should be reversed and the cause remanded, with directions to enter such judgment on the verdict of the jury as the justice of the case requires and the acts of Congress authorize.