ALBERS v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. February 9, 1920. Rehearing Denied April 5, 1920.)

No. 3385.

WAR ☞4—OTHER STATEMENTS BY DEFENDANT ADMISSIBLE TO SHOW INTENT TO VIOLATE ESPIONAGE ACT.

On trial of defendant for uttering language intended to incite resistance to the United States, then at war, and supporting and favoring the cause of its enemies, in violation of Espionage Act June 15, 1917, tit. 1, § 3, as amended by Act May 16, 1918, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), evidence of statements by defendant, after beginning of the war, but before the entry of the United States, showing that he was then a strong supporter of Germany, *held* admissible, as limited by the court, to the question of intent in using the language charged.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Criminal prosecution by the United States against Henry Albers. Judgment of conviction, and defendant brings error. Affirmed.

Henry E. McGinn, Charles H. Carey, and Veazie, McCourt & Veazie, all of Portland, Or., for plaintiff in error.

Bert E. Haney, U. S. Atty., and Barnett H. Goldstein, Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari granted 252 U. S. ——, 40 Sup. Ct. 584, 64 L. Ed. ——.

ROSS, Circuit Judge. The indictment under which the plaintiff in·error was prosecuted contained seven counts, the last three of which were based upon the Espionage Act of June 15, 1917 (40 Stat. 217, c. 30), and the first four upon the amended and enlarged Act of May 16, 1918 (40 Stat. 553, c. 75). The verdict of the jury having been in favor of the plaintiff in error as respects counts 1, 2, 5, 6, and 7, no further reference to them need be made.

The verdict, however, was against the plaintiff in error under counts 3 and 4. The first of those two charged, in substance, the declaration by Congress of war between the United States and the Imperial German government on the 6th day of April, 1917, and its due proclamation by the President, and that on the 8th of October, 1918, while a passenger on a Southern Pacific railroad train to Portland, Or., at a point between Grant's Pass and Roseburg in that state, the plaintiff in error willfully, unlawfully, and feloniously uttered language intended to incite, provoke, and encourage resistance to the United States and to promote the cause of its enemies, by then and there stating and declaring to and in the presence of 'L. W. Kinney, L. E. Gamaunt, J. A. Mead, E. C. Bendixen, F. B. Tichenor, and others to the grand jurors unknown, in substance and to the effect as follows:

"(1) 'I am a German and don't deny it—once a German, always a German.'

"(2) 'I served twenty-five years under the Kaiser (meaning William II, German Emperor), and I would go back to Germany to-morrow.'

"(3) 'I came here (meaning the United States) without anything, and I could go away without anything.'

"(4) 'I came to this country (meaning the United States), supposing it was a free country, but I find that it is not as free as Germany.'

"(5) 'McAdoo (meaning W. G. McAdoo, then and there Secretary of the Treasury of the United States) is a son of a bitch. Why should this government tell me what to do?'

"6. 'I am a pro-German; so are my brothers.'

"(7) 'A German can never be beaten by a Yank' (meaning an American).

"(8) 'You (meaning the United States) can never lick the Kaiser (meaning William II, German Emperor)—never in a thousand years.'

"(9) 'There will be a revolution in this country (meaning the United States) in ten years—yes, in two—maybe to-morrow.'

"(10) 'I could take a gun myself and fight right here (meaning in the United States).'

"(11) 'To hell with America.'

"(12) 'I have helped Germany in this war, and I would give every cent I have to defeat the United States.'

"(13) 'We (meaning Germany) have won the war' "

—and other statements of a like nature, but expressed in language too indecent to be spread upon the records of the court, all of which statements so made by the defendant were then and there willfully made with the intent to incite, provoke, and encourage resistance to the United States and to promote the cause of its enemies, the defendant then and there well knowing of the aforesaid state of war.

The fourth count, after alleging the declaration and proclamation of war as in the third, alleged that the defendant at the same time and place set out in the third count "did willfully, knowingly, unlawfully, and feloniously support and favor the cause of a country with which the United States was then and there at war, to wit, the Imperial

German government, and opposed the cause of the United States therein," by then and there stating to and in the presence of the same persons named in the third count the identical things set out in said third count, and which, therefore, need not be here repeated.

The statute (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c) upon which these two counts were based declares, among other things, that—

"Whoever, when the United States is at war * * * shall wilfully utter, print, write, or publish any language intended to incite, provoke, or encourage resistance to the United States, or to promote the cause of its enemies, * * * and whoever shall by word or act support or favor the cause of any country with which the United States is at war, or by word or act oppose the cause of the United States therein, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both," with a proviso not pertinent to the case.

The jury having found the defendant guilty as charged in counts 3 and 4, the judgment of the court was that he pay a fine of $10,000 and be imprisoned in the United States Penitentiary at McNeil's Island, Wash., for the term of three years.

In view of the many decisions of the federal courts sustaining convictions under the act upon which the indictment was based, it is needless to discuss the point raised as to its alleged unconstitutionality. It is enough to say that, as a war measure, we entertain no doubt of its validity. Nor do we see anything duplicitous in either of the counts here in question. Equally plain is it, we think, that the words alleged to have been spoken by the defendant to the persons named in the indictment were within the prohibition and condemnation of the statute. That they were spoken by him at the time and place and to the persons alleged was shown by testimony amply sufficient to sustain the verdict. Indeed, that fact is not seriously controverted by counsel for the plaintiff in error. The real question in the case on the trial was whether the words were spoken with the intent made by the statute an essential of the crime. That question was in the court below, and is here, most strenuously contested by counsel for the plaintiff in error, based upon the claim that he was so drunk at the time of uttering the words that he did not know or realize what he was saying. There was much evidence upon that point, and it is very substantially conflicting. In support of the defendant's contention regarding it, it was shown in his behalf that, although a native of Germany, he came to the United States more than 20 years prior to the beginning of the war, became a citizen of the United States by naturalization, and built up in the state of Oregon an extensive manufacturing business, with branches in various cities of this country, the company of which he was the head having more than 1,000 employés, many of whom, with his encouragement, entered the service of the United States; that he was a large contributor to the war charities, including the Red Cross; and that he and the company of which he was the head purchased in the aggregate about $300,000 worth of Liberty Bonds.

The defendant, as a witness in his own behalf, testified, among other things, that he had no recollecton of making any of the utterances with

which he was charged (his defense being that he was at the time so drunk as not to know or realize what he said), and disclaimed any wrong or disloyal intentions or sentiments.

No one, we think, can read the testimony of the running conversations which occurred in the smoking compartment of the Pullman car, between the defendant to the indictment and the other persons therein named, and in which conversations the prohibited and disloyal words were spoken by the defendant, in connection with the further undisputed fact that the latter had ultimately to be assisted by the porter of the car to his berth and put into the bed with his clothes and shoes on, without seeing that he must have been very drunk. Whether he was too drunk to know or realize what he said when he uttered the prohibited and disloyal words, as has already been observed, the real question in the case; and the jury having resolved that fact, upon conflicting evidence, against the defendant, under full, clear, and eminently fair instructions of the learned trial judge upon the point, we should, of course, under the well-established rule upon the subject, affirm the judgment against the plaintiff in error, if there were nothing else in the case.

There was, however, upon that vital and close question of intent, introduced in evidence testimony of two witnesses, David McKinnon and Henry Cerrano, the former of whom was permitted to and did testify, among other things, that a few months after the beginning of the war, fixing the time as September, October, or November, 1914, he met and had a conversation with the defendant on a street in the city of San Francisco, Cal., during which the defendant brought up the subject of the war, asking the witness what he thought of it, to which the latter replied that he did not wish to have much to say about it, was very sorry it had occurred, and thought it too bad that national disputes could not be settled in other ways than by bloodshed, whereupon the defendant said to the witness: "What do you think of our British cousins?" To which the witness replied, "No British cousins of mine; nothing of British who are cousins of mine." That the defendant then said to the witness: "Never mind; before we get through with them we will kill every man, woman, and child in England."

The witness Cerrano was permitted to and did testify, among other things, that he was janitor of Albers Bros. (of which company the defendant was the head), and that some time prior to October, 1915, he was cleaning windows in the office of the company when the defendant entered with a German-American paper and gave it to a young man who was working in there, saying: "Look at that paper. See what the German army is doing. The German army is doing wonderfully, and France and England come very easy"—and added: "One kaiser and one God." That testimony of the witnesses McKinnon and Cerrano the defendant objected to upon the ground, in substance, that it related to occurrences too remote, and that it had no tendency whatever to show the intent involved in the crime with which the defendant was charged, and, upon the overruling of the objections, exceptions were duly reserved.

In admitting the testimony the court distinctly ruled that it was admitted as tending to show the bent of the defendant's mind and his attitude as between the United States and Germany, with a view to enabling the jury to determine the defendant's real intention in saying and doing the things with which he was charged, and for that purpose only, and in its charge to the jury the court also specifically and clearly so limited it. There can be no doubt that the testimony had a tendency to establish the vital question of intent in the case. The question is: Was it too remote?

In the recent case, decided by this court, of Equi v. United States, 261 Fed. 53, —— C. C. A. ——, a like question was presented and was strenuously argued. There, the record showed, testimony was admitted of what the defendant to the indictment had said and done June 3, 1916, as bearing upon the intent with which he was alleged to have committed, on June 27, 1918, the offense there involved, in violation of the same Espionage Act—a period of more than two years between the two dates. This court there distinctly adjudged the testimony not too remote, the purpose being properly limited, and the Supreme Court on petition for a writ of certiorari has just denied the petition. It is manifest that a like ruling must be made in the present case, unless the Equi Case is to be overruled, which we are not prepared to do.

As bearing upon the question, although not so directly in point, see, also, Rhuberg v. United States, 255 Fed. 865, 167 C. C. A. 185; Shidler v. United States, 257 Fed. 620, —— C. C. A. ——; Coldwell v. United States, 256 Fed. 805, —— C. C. A. ——; Kirchner v. United States, 255 Fed. 301, 166 C. C. A. 471; United States v. Schulze (D. C.) 253 Fed. 377. No other point made in behalf of the plaintiff in error requires, we think, special mention, although we have given to the record and the arguments of counsel most careful consideration.

The judgment is affirmed.