### ROGERS et al. v. DESPORTES, Richland County Jailer, et al.

(Circuit Court of Appeals, Fourth Circuit. September 10, 1920.)

No. 1850.

1. **Habeas corpus** ⊜109—**Remand of petitioner to sentencing court for resentence held proper practice.**

There being no statute giving to the District Court originally imposing sentence jurisdiction in habeas corpus proceedings by persons confined in a penitentiary in another district alleging their sentence and confinement to be illegal, it was the proper practice for the judge of the district in which such a penitentiary was located, on determining, in such habeas corpus proceedings, that the petitioners' sentence was unlawful, to remand petitioners for resentence to the court of their original prosecution, so that, by appeal from the latter court's further action, if unfavorable to petitioners, the sentence might be reviewed by the proper Circuit Court of Appeals, rather than by the Circuit Court of Appeals of the penitentiary district.

2. **Criminal law** ⊜1218—**Hard labor not requisite of sentence of federal court to Atlanta.**

The power of a federal court to direct imprisonment in the penitentiary at Atlanta of a defendant convicted of a felony *held* not limited, under the federal Prison Act of 1891 (Comp. St. §§ 10552–10560) and the act of 1901 (Comp. St. § 10563), as to the Atlanta penitentiary, to cases

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

where hard labor is a part of the sentence imposed, in view of Cr. Code, §§ 335, 338, 341 (Comp. St. §§ 10509, 10512, 10515).

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston.

Application for habeas corpus by S. M. Rogers and others against H. W. Desportes, County Jailer for Richland County, and another. From an order (268 Fed. 83) refusing to discharge petitioners, they appeal. Affirmed.

C. T. Graydon, of Columbia, S. C. (Cole L. Blease, of Columbia, S. C., of counsel), for appellants.

Francis H. Weston, U. S. Atty., of Columbia, S. C., for appellees.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge. This is an appeal from an order refusing to discharge the petitioners under a writ of habeas corpus. The facts present a very unusual situation. The petitioners were convicted on the 22d day of January, 1920, in the District Court of the United States for the Eastern District of South Carolina, of the violation of sections 3258, 3281, and 3279 of the United States Revised Statutes (Comp. St. §§ 5994, 6021, 6019). They were each sentenced to pay a fine of $500 and the cost of the prosecution, and to be confined for one year in the United States penitentiary at Atlanta. Although represented by counsel at the trial, there was no exception to the sentence and no application for a writ of error. On the 2d day of February, 1920, the petitioners were committed to the Atlanta penitentiary to serve their sentences.

Thereafter, on the 9th day of June, 1920, under habeas corpus proceedings, Hon. Samuel H. Sibley, Judge of the District Court of the United States for the Northern District of Georgia, held that the sentence to the Atlanta penitentiary for one year, not at hard labor, was illegal and void, and that the detention of the petitioners in the penitentiary was unlawful. On the 2d of July, 1920, Judge Sibley made an order directing the United States marshal for the Northern district of Georgia to transport the petitioners to Columbia, S. C., and there deliver them to the United States marshal for the Eastern district of South Carolina "to the end that such correction as may be lawful may be made in the sentence imposed upon them." In the effort to carry out this order, the marshal for the Northern district of Georgia transported them to Columbia, and there delivered them to the jailer for the county of Richland to be safely kept by him in the county jail until delivered to the marshal for the Eastern district of South Carolina. The marshal for the Eastern district of South Carolina has, however, declined to receive them into his custody.

The petitioners then made application to the Hon. H. A. M. Smith, District Judge for the Eastern District of South Carolina, for their release under a writ of habeas corpus upon the ground that the original sentence was held by Judge Sibley to be void, and that their detention was unlawful. In a written opinion dated July 31, 1920, Judge Smith held that the original sentence was lawful; that if as to the place of confinement, and the length and terms of confinement, it was not in

strict accordance with the statute, the sentence was not void, and could be corrected only by writ of error; and that Judge Sibley had no jurisdiction to review the sentence and direct a resentence. Accordingly an order was made that the marshal for the Eastern district of South Carolina return the petitioners to the custody of the warden of the United States penitentiary at Atlanta, Ga., to serve the sentences imposed. From this order the petitioners appeal.

[1] Judge Sibley, District Judge for the Northern District of Georgia, in which the Atlanta penitentiary is situated, had jurisdiction to entertain the writ of habeas corpus and to order the release of the petitioners if he found the sentence was absolutely void. The correctness of his judgment was reviewable by the Circuit Court of Appeals for the Fifth Circuit, and by certiorari by the Supreme Court of the United States. His order remanding the petitioners to the Eastern district of South Carolina for resentence was not binding on the judge of the Eastern district of South Carolina, for Judge Smith of that district is of equal authority with Judge Sibley. Nevertheless, in the present unsatisfactory state of the law we incline to think that Judge Sibley adopted the most convenient practice. Upon the arrival of the petitioners in the Eastern district of South Carolina, Judge Smith was at perfect liberty to hold that his original sentence was correct, refuse to alter it, and order the petitioners remanded to the Atlanta penitentiary. This order gave them the opportunity to apply for a writ of habeas corpus before him, and, upon his refusal to discharge them, to bring the matter by appeal to this court. The result is that the sentence of Judge Smith, alleged to be erroneous, is reviewed by this court having jurisdiction to correct his errors, rather than by the Court of Appeals of the Fifth Circuit whose office is to correct errors in that circuit. This is unfortunate circuity, but it seems to be unavoidable until a mere expeditious method is prescribed by statute by which District Courts of this circuit will have jurisdiction in habeas corpus, as to persons confined in the Atlanta penitentiary from the District Courts in this circuit, alleging their confinement to be illegal. It seems hardly necessary to say that Judge Sibley's holding that the sentence was illegal is not binding on this court as res adjudicata. He did not undertake to make it so. The only judgment made by him was that the petitioners should be returned to the Eastern district of South Carolina for resentence. He expressly refused to make any judgment discharging them.

[2] A review of all the authorities on the subject leaves the mind in great confusion as to the distinction between an erroneous sentence to be corrected by writ of error alone and a void sentence from which the prisoner is entitled to be released either by a writ of error or under habeas corpus proceedings. It is unnecessary for this court in the present case to define the distinctions or to lay down a rule for proper procedure, since the disposition of the cause on the question of the lawfulness of the sentence will dispose of the entire case. In order to arrive at a clear understanding of the power of the trial court to order the execution of its sentences in state or federal penitentiaries, it will be necessary to review both the statutory provisions

and the decisions of the Supreme Court relating to the subject. It will also be necessary to emphasize the distinction between the statutes enacted prior to 1891, which relate exclusively to state penitentiaries, the federal prison act of 1891 (Comp. St. §§ 10552–10560), and that of 1901 relating to the Atlanta penitentiary (Comp. St. § 10563), which dealt exclusively with federal penitentiaries or prisons.

The statutes relative to state jails and penitentiaries which are still in existence had been passed long prior to the federal prison act of 1891. These provisions are embodied in the following sections of the Revised Statutes: Section 5537 (Comp. St. § 10521), permitting the marshal to provide for temporary jails in states where the use of state jails, penitentiaries, etc., is not allowed to the United States; section 5538 (section 10522), authorizing the marshal to make provision for the safe-keeping of United States prisoners until permanent provision is made by law; section 5539 (section 10523), which provides that criminals convicted of any offense against the United States imprisoned in a state jail or penitentiary shall be subject to the same discipline and treatment as convicts sentenced to such institutions by the courts of the state; section 5541 (section 10527), which provides that persons convicted of any offense against the United States and sentenced to imprisonment for "longer than one year" may be sentenced to a state jail or penitentiary within the district or state where the court is held; and section 5542,[1] which provides that criminals convicted of any offense against the United States and sentenced to imprisonment and confinement at hard labor may be imprisoned in a state jail or penitentiary. It will be seen from a review of these statutes that unless a convict was sentenced to confinement at hard labor the sentence could not be executed in a state penitentiary, unless the sentence was for more than a year. This was the precise point decided in the case of In re Mills, 135 U. S. 263, 10 Sup. Ct. 762, 34 L. Ed. 108. There the prisoner was charged by two separate indictments and pleaded guilty (1) to carrying on the business of an illicit liquor dealer without having paid the special tax provided by law, as provided by section 3242 of the Revised Statutes (Comp. St. § 5965); and (2) to having sold liquor to an Indian in violation of section 2139 of the Revised Statutes (Comp. St. § 4136a). He was sentenced on the first charge to imprisonment in the Ohio state penitentiary for the period of one year, and to pay a fine of $100 and costs; and on the second charge to be imprisoned in the same penitentiary for a period of six months and to pay a fine of $50 and costs, this term to begin at the expiration of the year. The court held that the separate sentences could not be treated as one sentence, and that, since the imprisonment provided for in neither case exceeded one year, the court had exceeded its jurisdiction. In the case of In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149, the same question arose as to the right to sentence the prisoner to a state penitentiary for a period not exceeding a year under section 5546 of the Revised Statutes.[2] The court held, as in the Mills Case, that it was without the jurisdiction of the court to sentence to a state penitentiary under this section unless the sentence exceeded a year. The issue in neither of these cases was based upon

[1] Comp. St. § 10528.     [2] Comp. St. § 10547.

the right of sentencing to imprisonment at hard labor under section 5541, and neither related to a federal penitentiary.

In the case of Bryant v. United States, 214 Fed. 51, 130 C. C. A. 491, the sentence was to imprisonment in a federal penitentiary for a period of one year. The case, however, is not authority for holding that such imprisonment, without in terms specifying hard labor, is illegal. It is true that the District Judge before whom the writ of habeas corpus was brought held that the sentence was illegal, and the other District Judge who passed the sentence acquiesced in that view. The question before the Circuit Court of Appeals did not involve that issue. It was decided that the proper course of procedure in cases of illegal sentence was not to discharge the prisoner, but to return him to the court which tried him for the correction of such sentence, and that the resentence of a prisoner under such circumstances was lawful, although the term of the court at which the sentence was passed had expired. On the question of the legality of the original sentence the court at least inferentially suggested that, although that question was not raised, there was doubt upon this point. The language used was:

"The defects in the * * * sentence, *if any* (italics ours), did not inhere in the trial or verdict, and therefore it appears Bryant is guilty and was properly convicted."

The court also emphasized the fact that the orderly proceeding for the correction of the first sentence, if illegal, would have been by writ of error; the court saying:

"He could have had the defects corrected by a direct proceeding for that purpose, which would have enabled the appellate court to regard also the rights of the government."

And quoting the following language from Ex parte Spencer, 228 U. S. 652, 33 Sup. Ct. 709, 57 L. Ed. 1010:

"When the orderly procedure of appeal is employed, the case is kept within the control and disposition of the courts, and if the judgment be excessive or illegal it may be modified or changed and complete justice done, as we have said, to the prisoner, and the penalties of the law satisfied as well."

An important question relating to the right of courts to sentence to prisons where hard labor was required as a part of the discipline had previously been decided in the case of Ex parte Karstendick, 93 U. S. 396, 23 L. Ed. 889. Karstendick was convicted in the Circuit Court of the United States for the District of Louisiana on May 1, 1876, for conspiracy under section 5440 of the Revised Statutes.[3] The punishment prescribed by the statute for this offense was a penalty of not less than $1,000, or more than $10,000, and imprisonment for not more than two years. It being ascertained that there was no suitable penitentiary in the district of Louisiana, the sentence was ordered to be executed in the penitentiary at Moundsville, W. Va. Karstendick was taken to this penitentiary, and while serving his sentence sued out a writ of habeas corpus and sought to be discharged on the ground that his imprisonment in the penitentiary without the state of Louisiana was not authorized by law and consequently void. He further challenged the jurisdiction on the ground that the crime was not by statute punish-

[3] Comp. St. § 10201.

able by confinement at hard labor and that since imprisonment in the penitentiary at Moundsville necessarily implied imprisonment at hard labor the sentence was in excess of the power conferred. The court said:

"We have not been able to arrive at this conclusion. In cases where the statute makes hard labor a part of the punishment, it is imperative upon the court to include that in its sentence. But where the statute requires imprisonment alone, the several provisions which have just been referred to place it within the power of the court, at its discretion, to order execution of its sentence at a place where labor is exacted as part of the discipline and treatment of the institution or not, as it pleases. Thus, a wider range of punishment is given, and the courts are left at liberty to graduate their sentences so as to meet the ever-varying circumstances of the cases which come before them. If the offense is flagrant, the penitentiary, with its discipline, may be called into requisition; but if slight, a corresponding punishment may be inflicted within the general range of the law.

"This view of the case is strengthened by a further examination of the legislation upon this subject. As early as 1825, in an 'Act more effectually to provide for the punishment of crimes against the United States, and for other purposes' (4 Stat. 118), it was enacted (section 15) that 'in every case where any criminal convicted of any offense against the United States shall be sentenced to imprisonment and confinement at hard labor, it shall be lawful for the court by which the sentence is passed, to order the same to be executed in any state prison or penitentiary within the district or state where such court is holden, the use of which prison or penitentiary may be allowed or granted by the Legislature of such state for such purposes.' With this statute in force, the act of 1865, which has already been referred to, was passed, giving the same power in nearly the same words, where the punishment was by imprisonment for a longer term than one year, without any special requirement as to hard labor.

"These two acts are separately re-enacted in the Revised Statutes. The act of 1825 is reproduced in section 5542, and that of 1865 in section 5541, the language of the two original acts being substantially retained in the revision. With this legislation in full force, it is impossible to believe that it was the intention of Congress to confine imprisonment in penitentiaries exclusively to cases in which hard labor is in express terms made by statute a part of the punishment."

In the Mills Case, supra, the same question incidentally arose, and the court cited with approval the Karstendick Case; and further held that all crimes which were punishable by imprisonment in a state penitentiary, or prison, are infamous and can be proceeded against only by presentment or indictment of a grand jury, citing Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89, in which it is held that, where the crime is infamous within the meaning of the Constitution, the question is whether it is one for which the statute authorizes the courts to award an infamous punishment and not whether the punishment awarded is an infamous one. It was said, inter alia:

"An offense which the statute imperatively requires to be punished by imprisonment 'at hard labor,' and one that must be punished by 'imprisonment,' but the sentence to which imprisonment the court may, in certain cases, and in its discretion, require to be executed in a penitentiary where hard labor is prescribed for convicts, are, each, 'punishable' by imprisonment at hard labor. The former offense certainly must be thus punished; and as the latter may, in the discretion of the court, be so punished, it may, also, and not unreasonably, be held to be 'punishable' by imprisonment at hard labor."

A later case was that of United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 632. Pridgeon was tried at the September term, 1890, of the district court of the First judicial circuit of Logan county, Oklahoma territory, and for the Indian country, and convicted of horse stealing. The penalty for the offense charged was "punishable by a fine of not more than $1,000, or by imprisonment not more than fifteen years, or by both * * * at the discretion of the court." U. S. Statutes at Large, vol. 25, p. 33. The sentence was that—

"The said Sidney S. Pridgeon, for the said offense by him committed, be imprisoned in the Ohio state penitentiary at Columbus (and confined at hard labor) for the term of five years, etc."

The usual discipline of the Ohio penitentiary for prisoners confined therein included hard labor. After beginning the service of his sentence the prisoner applied for discharge under writ of habeas corpus, alleging that he was wrongfully restrained of his liberty: First, because the court which tried, convicted and sentenced him had no jurisdiction in the premises; and, second, because the sentence imposed was beyond the power and jurisdiction of the court, and therefore void. He was discharged by the Circuit Court upon the ground that the sentence should have been for imprisonment alone, since the statute did not provide for hard labor, and that the imposition of hard labor as a part of the punishment rendered the whole sentence void. From this decision the United States appealed. In passing upon the appeal the Supreme Court said:

"The question, therefore, narrows itself down to this: Was the sentence imposing that term of imprisonment rendered void by the addition of 'hard labor' during his confinement?"

The court then after quoting at length, and with approval, from the Karstendick and Mills Cases, said:

"Under the rule announced in these cases, while the Act of February 15, 1888 [under which he was indicted and convicted], does not specifically authorize the imposing of 'hard labor' as a part of the sentence of imprisonment, still it was competent for the court to sentence the party convicted to imprisonment in a penitentiary where 'hard labor' is a part of the usual discipline; so that the provision for 'hard labor' in the sentence is nothing more or less than a sentence to simple imprisonment in the Ohio penitentiary, subject to its rules, regulations, and discipline, and if the sentence had been imposed in this form it could not justify the release of the prisoner on habeas corpus under the rule above announced. It is doubtful whether upon a writ of error the prisoner would have been entitled to a modification of his sentence by striking out the 'hard labor' portion thereof. By section 5539, Rev. Stat., it is provided that 'Whenever any criminal, convicted of any offense against the United States, is imprisoned in the jail or penitentiary of any state or territory, such criminal shall in all respects be subject to the same discipline and treatment as convicts sentenced by the courts of the state and territory in which such jail or penitentiary is situated; and while so confined therein shall be exclusively under the control of the officers having charge of the same, under the laws of such state or territory.'

"Suppose the five-year sentence had embodied the provision of this section —which it could lawfully have done—would it have carried with it, in point of fact, 'hard labor' as a part of the discipline of the Ohio penitentiary? This being so, it is difficult to see upon what principle it can be held that the sentence of imprisonment is vitiated and rendered void for expressly including

the element or feature of 'hard labor,' which would have been otherwise implied in the sentence of simple imprisonment."

It must be conceded that there is difficulty in reconciling the numerous decisions on this subject. The apparent conflicts may be harmonized, however, by limiting the doctrine announced in these cases to the precise points of law and fact considered in each one of them. After careful consideration of all the statutes and decisions, the decided preponderance of reason and authority seems to us to lead inevitably to these conclusions: (1) That a sentence to a penitentiary, or other prison where hard labor is required, is valid notwithstanding the omission of the words "hard labor" in the statute defining the crime and its punishment; (2) that where the right to sentence to a penitentiary exists the inclusion in the sentence of the words "hard labor" do not vitiate it, although the statute defining the crime and its punishment does not provide for hard labor.

This was the law at the time of the enactment of the federal prison act of 1891. That act embraced nine sections, and, although the fact may be immaterial, the word "penitentiary" was not used therein. The first section authorized the Attorney General and the Secretary of the Interior to purchase three sites and "cause to be erected thereon suitable buildings for the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor." If it be assumed that this provision was intended as a limitation of the class of prisoners who can be sent to these prisons, there is no basis in law or fact for the contention that the limitation of the right to send prisoners to state penitentiaries only where sentences are for terms of more than one year should be made applicable to this act. The limitation here was to one year or more. In view of the decisions in the Karstendick, Mills, and Pridgeon Cases, it would appear that the power to confine at hard labor did not depend upon the statute which defined the crime and its punishment so providing, nor upon the sentence expressly providing for hard labor. In this view of the case, the sentence in the instant case being for one year would be held to be lawful. However, it is not necessary to limit this decision to that point for the reasons hereinafter stated.

The provisions governing the Atlanta penitentiary are set out in the act of 1901, and so much of the original federal prison act as relates to the Atlanta penitentiary, is limited and defined by the later act. It is therein expressly stated that the United States penitentiary at Atlanta, Ga., shall be carried on in accordance with sections 4, 5, 8, and 9 of the act approved March 3, 1891. If it had been intended that the other sections of the act should govern, it is inconceivable that it would not have been so stated. The expressed inclusion of only certain sections of the act would seem necessarily to exclude other sections not mentioned. This view is strengthened by the fact that the act of 1895 (Comp. St. § 10562) relating to the Ft. Leavenworth penitentiary provides that it should be carried on in accordance with sections 4, 5, 6, 7, 8, and 9, thus including certain sections not mentioned in the Atlanta penitentiary act. In the case of the Ft. Leavenworth penitentiary it has been held by the Circuit Court of Appeals for the Eighth Circuit

in O'Brien v. M'Claughry, 209 Fed. 816, 126 C. C. A. 540, that the ·provisions of section 1 of the act of 1891 were repealed by the subsequent act of 1895 relating to the establishment of this penitentiary.

It must be remembered that the crime for which the petitioners were convicted is a.felony. "All offenses which may be punished by death or imprisonment for a term exceeding one year' shall be deemed felonies. Other offenses shall be deemed misdemeanors." Criminal Code, § 335 (Comp. St. § 10509). This section was enacted March 4, 1909. At the same time section 338 (section 10512) was enacted, which provides:

"The omission of the words 'hard labor' from the provisions prescribing the punishment in the various sections of this act, shall not be construed as depriving the court of the power to impose hard labor as a part of the punishment, in any case where such power now exists."

When the Criminal Code was enacted the words "hard labor" were omitted from all statutes therein embraced which had previously provided therefor. This, we apprehend, was done in view of the law as determined at the time of the adoption of the Code by the decisions of the Supreme Court, and the statutes already existing. The question of punishment by hard labor had been left almost exclusively to the discretion of the courts. It is true that in some cases it was imperative, but nevertheless the courts had the right to impose hard labor as a part of the sentences in all cases where the discipline of the prison to which they might sentence required it, although not specifically provided for in the statute defining the crime. As a matter of fact, it was so imposed almost indiscriminately. The records show that of the several thousand prisoners now serving sentences for crimes committed against the United States, the vast majority of those confined in state and federal penitentiaries are serving sentences at hard labor for crimes which have never been imperatively so punished. The Criminal Code has abolished hard labor as a part of the necessary punishment for the crimes which it defines by the entire omission of the words "hard labor" from the statutes re-enacted therein. Section 338 of this Code is merely permissive, and was intended to preserve the rights of the courts to require hard labor in their discretion, in all proper cases. This view is strengthened by the fact that section 341 of the Criminal Code (Comp. St. § 10515) after specifically repealing numerous statutes further provided:

"Also all other sections and parts of sections of the Revised Statutes and acts and parts of acts of Congress, in so far as they are embraced within and superseded by this act, are hereby repealed."

The framers of the Code recognized that, before its adoption, the use of the words "hard labor" in a penal statute had become, as it were, surplusage, and that it was not necessary to provide in separate acts for a punishment that could be imposed by the courts in their discretion. That this was the view of the lawmakers is further emphasized by the fact that in no statute passed subsequent to the adoption of the Code was any crime, however heinous, made in terms punishable by hard labor. Neither the treasonable crime of espionage, nor

the revolting crime of white slavery, was made so punishable by the statutes denouncing these offenses. Since the federal prison act in section 1 provided that the buildings to be erected should be suitable for the confinement of all persons convicted of any crime whose term of imprisonment is one year or more at hard labor, the narrow construction of the act as argued by counsel for petitioners would preclude the sentencing to United States penitentiaries of any person whose crime was not by statute authorized to be "punishable by hard labor." The result of such construction would be that, after all the expenses incurred by the government in providing for these prisons, the courts would be powerless to have their sentences executed in any of them. Neither treason, robbery, perjury, nor other of the most infamous crimes could be so punished.

It must be remembered that a crime for which the punishment is death or imprisonment for more than a year is a felony and not a misdemeanor. Originally felonies were punishable by death, and by forfeiture of one's goods. Later on a distinctive characteristic was that they should be punishable by death or imprisonment in a penitentiary.

Since the act creating the Atlanta penitentiary deals with the treatment of its own prisoners, the government's power to send convicts there is not to be limited by the special statutory enactments relating to state prisons. The humane treatment accorded to prisoners in this penitentiary, where it is provided that they shall have opportunities for recreation, are being taught useful trades, and otherwise cared for both as to health and moral training, furnishes a strong ground for giving liberal construction to the statutes and laws concerning its establishment and operation.

The interests of the government and the welfare of its prisoners both demand that the United States shall not be prevented by unnecessarily restricted construction of custom or statute from using its own instead of state jails and penitentiaries. The effect of such restriction would be to subject unfortunate convicts to the demoralizing conditions that so often exist because of the lack of opportunity to work and to learn useful trades, and because of the unsanitary conditions due to lack of proper buildings which surround so many of the latter institutions. It has come to be universally recognized that labor is ennobling and not degrading, and that to deny a prisoner the opportunity of exercise and labor is demoralizing in the extreme. Any idea that hard labor is cruel and unusual punishment has long since been disproved in fact and should be, and now is, denounced in theory.

The crime for which the petitioners were convicted is made infamous by statute and not by any sentence imposed within the limitations of the law. It is significant that in the act creating the Atlanta penitentiary, not only was no mention made of the length of the term required, but it was expressly provided that the Attorney General should be authorized to transfer in his discretion to this penitentiary such prisoners undergoing sentence of confinement imposed by the United States courts in other institutions at the time of the passage of the act as could be conveniently accommodated therein.

Since the crime for which the petitioners were convicted is a felony

and is liable to punishment at hard labor in the discretion of the court, and is one subject to imprisonment in a penitentiary, and since there is no limitation as to time in the Atlanta penitentiary act, we are constrained to hold that the sentence was in all respects lawful and the petition for discharge should be and is refused, and that the order appealed from should be affirmed.

The petitioners have been in custody pending the consideration of the writs of habeas corpus; therefore, the time of their absence from the Atlanta penitentiary must not be excluded from the computation of the time for serving their sentences, which should expire, notwithstanding this fact, as provided in the original sentences.

So far as the views herein expressed are inconsistent with our decision in Hickson v. United States, 258 Fed. 867, 169 C. C. A. 587, the latter case must be deemed overruled.

Affirmed.